LEIGH M. CLARK, Retired Circuit Judge.
This is an appeal from a judgment of conviction and sentence to imprisonment for life on a trial by a jury, in which the jury returned a verdict finding defendant guilty of robbery in the first degree, “in violation of Title 13A-8-41 of the Code of Alabama.” The indictment alleged in pertinent part:
“... Carl Steve Carter ... did, in the course of committing a theft of three hundred sixty ($360.00) dollars ... the property of Cobert Lee, an individual doing business as Lee’s Service Station, use force against the person of Cobert Lee with intent to overcome his physical resistance or physical power of resistance, while the said Carl Steve Carter was armed with a deadly weapon, to-wit: a shotgun.... ”
No issue is raised on appeal as to the sufficiency of the evidence to support the verdict. Therefore, we confine our discussion of the evidence to a short narrative thereof that is sufficient for an understanding of the specific issues raised on appeal.
According to the testimony of Cobert Lee, the alleged victim, while he was operating a country store and service station on May 5, 1981, the defendant drove an automobile up to one of the pumps of the station and asked for “two dollars of gas.” When the gas was pumped into the car, defendant walked into the station and was in the process of paying for the gas and purchasing a pack of cigarettes when another person, Ronnie Snow, came in the station with a shotgun and told Lee it was a robbery and he wanted Lee’s money. Lee further testified:
“So, there I was. When I got through with that, they got back to the door, and so he came back and, he said, he didn’t want any more monkey motions or whatever. Money. I said, well, I felt like who would have thought it. And, I said, well, this is all I’ve got. I opened the cash register. So, Carter, he started reaching and got in and out. So, when he got all of my money, left. And, so Snow, with a shotgun, he told me to lie down in the floor and better stay there. So, I did. “When I got up and looked out the window, the car was gone. I didn’t hear it leave. So, I guess, my heart was making too much noise. But when I looked out and the car was gone and, I said, well, nothing I can do, except call the law enforcement, the sheriff.
“So, I rung once. Probably missed the number or something, or busy. And, I dialed the second time and they answered. ...”
During further testimony of Mr. Lee, he said that the motor vehicle the defendant was driving was a “Camaro.” The witness afterwards identified a picture of a Camaro automobile as a picture of the automobile which the defendant was driving at the time he obtained the two gallons of gasoline for the automobile at the service station of the witness. The admission in evidence of such picture as a State’s exhibit is one of the issues raised by appellant, which issue we will discuss later.
Deputy Sheriff Shirley Vandiver testified that he received the call at the courthouse as to the robbery at about 4:20 P.M. and promptly thereafter set up a road block at *1363 Ryan’s Creek and thereafter saw an automobile, which he identified as the automobile shown in the photograph designated State’s Exhibit No. 6, in which there were five individuals, including the defendant as the driver of the vehicle. Although he had apparently stopped, or almost stopped, the vehicle, it “Took off real fast,” and the last he saw of the vehicle was “approximately quarter of a mile till they went out of my sight.” During this time, he was in contact with some of numerous backup units in automobiles. Officer Vandiver participated in the pursuit of the automobile and the robbers, the subsequent apprehension and arrest of the robbers, and in the seizure of the automobile. When the automobile was seized, it was not occupied by either the appellant or the man who used the gun in the service station. In the automobile at the time of its seizure were three other people, one male and two females.
Lauri Ann Miller, a seventeen-year-old girl, testified on call of the State. She testified that she was in the automobile with the defendant and Snow and her brother and another girl when they drove up to the filling station where the robbery occurred. She saw defendant and Snow as they went into the station, with Snow having the gun, and when they returned to the automobile defendant drove the automobile away from the station. She said that some time while they were traveling away from the scene, “they” threw the gun out of the automobile.
Appellant’s first contention for a reversal is that the trial court erred in overruling defendant’s objection to the introduction of State’s Exhibit Six. The ruling of the court occurred during the direct examination of the victim of the robbery, Mr. Lee. State’s Exhibit No. Six is a photograph of an automobile. After the witness had testified at length as to the photograph, the following occurred:
“Q. Does that picture, State’s Exhibit No. Six, accurately depict and portray the vehicle as it appeared on that occasion?
“A. Yes, sir.
“MR. HARRIS [State’s Attorney]: Judge, I would move to introduce State’s Exhibit No. Six at this time.
“THE COURT: Okay. Is there any objection?
“MR. LEWIS: Yes, sir, Your Honor.
“THE COURT: Pardon?
“MR. LEWIS: Yes, sir. Objection. The proper foundation laid. Foundation for the exhibit lacks reliability, lack of proof that the conditions are the same.
“THE COURT: Overruled.
“The exhibit will be in evidence.”
We find no merit whatever in appellant’s first contention. Whether the condition of the automobile was the same at the time of the robbery as it was at the time the photograph thereof was taken was not material. The identity of the automobile was the major question involved. The witness had had a good opportunity to observe the Camaro automobile and had already testified at length that the picture was a picture of such automobile. The statement made in the objection to the admission of the exhibit that “the exhibit lacks reliability” is a conclusion of the objector as to which the trial court was in apparent disagreement and was justified in overruling defendant’s objection.
By the second issue presented by appellant, he contends that the trial court erred in overruling the defendant’s objection to the admission in evidence of State’s Exhibit No. Seven. This exhibit purports to be a photograph of a place along the side of the road, which according to the witness Lauri Ann Miller was a photograph of the place where the gun was thrown and where she afterwards went back with a law enforcement investigator and showed him the place and the gun while it was lying there. She testified that the “picture accurately depict[ed] and portray[ed] the place where the shotgun was located on May 5 of 1981, where it was thrown out and where he went back and Mr. Nesmith saw the gun.” When the State offered to introduce the exhibit in evidence, defendant’s counsel said “Objection on the grounds of improper predicate has been laid.” The court replied,
*1364 “Overruled, it will be in evidence.” Although the particular exhibit may not have been an important item of evidence, it was clearly admissible, in our opinion, and was certainly not objectionable on any ground assigned by defendant.
By appellant’s third contention for a reversal, he groups State’s Exhibits One, Two, Three, Four and Five. These exhibits were obviously five parts of a shotgun. They were admitted in evidence after the testimony of Investigator Johnny Nesmith with the Department of Public Safety, Alabama Bureau of Investigation, who took part in the apprehension of the suspects and the investigation of the robbery on the day the robbery occurred. He testified:
“We discovered a double barrelled Henry shotgun on the side of the road laying right in the edge of the grass, seven-tenths of a mile south of U.S. 278 Highway near the electric substation there on the Cl -Hill Road.
“Q. I asked you to examine State’s Exhibit No. One, Two, Three, Four and Five, and tell the jury what that is, please, sir.
“A. This is the shotgun that I found with Miss Miller and Felix Easterwood on the side of the road at approximately a little after five o’clock, approximately 5:50, 5:40, somewhere along there, on the 5th day of the month of May.
“Q. Now what was the condition of that shotgun at the time that you first saw it?
“A. When I first saw it, I took photos of it and it was in bad condition. The stock was burst, etc., and it was just hanging together from where it had hit the pavement when it was thrown from the vehicle. And, I put my initials on it there to mark it and so forth.”
State’s Exhibits One, Two, Three, Four and Five were admitted in evidence during the testimony of Deputy Larry Waldrop, of the Cullman County Sheriff’s Department, who also participated in the investigation and apprehension of the persons who Mr. Lee said had robbed him. He testified that he took “State’s Exhibit No. One through Five from Sgt. Nesmith on the night of the robbery, that the stock was broken on it at that time but it was still intact, but “real shakity.” He said the exhibit had been in his possession since May 5, 1981, and was in substantially the same condition on the day he testified as it was on May 5. He said:
“The only difference is when I went to get it out of the evidence locker yesterday to bring it up here, it fell apart. The hammer has come off it and the stock has finished coming off. But other than that, it is in the same condition.”
At the time of the offer of State’s Exhibits No. One, Two, Three, Four and Five the following occurred:
“THE COURT: Any objections?
“MR. LEWIS: Yes, sir. Objection on material variance, proper foundation laid.”
“THE COURT: Overruled. It will be in evidence.”
We agree with the trial court that defendant’s objection was not well taken and should have been overruled, as it was.
The fourth issue presented by appellant is thus stated in his brief:
“The Trial Court erred to reversal in granting the State’s Motion to Exclude the Testimony of Aaron York, a character witness for the appellant.”
Mr. York testified on call of the defendant that he knew the defendant and had lived in proximity to him since 1970. He testified on direct examination.
“Q. Did y’all have business? Did you ever have business with him during that time?
“A. Yes, sir.
“Q. What type of business relationship did you have with him?
“A. Well, the Carter Family and Kathy Gospel Singing Group called me to drive the bus for them. And, at that time I started driving the bus for them.
“Q. How long did you drive the bus for them?
“A. Well, driving the bus and singing with them until I had a heart attack in 1976.
*1365 “Q. What period of time, approximately, did this cover? What years did this cover?
“A. From ’70 till ’76.
“Q. During the time you have known and lived near Steve Carter, have you been acquainted with others living in the community that, also, know him?
“A. Well, yes, I have.
“Q. Are you familiar with the reputation of Steve Carter for truth and veracity in the community in which he lives?
“A. Yes.
“Q. Is that reputation good or bad?
“A. In my opinion, it would be good.
“Q. Are you aware of Steve’s prior felony convictions?
“A. Yes, lam.”
Cross examination of the witness commenced immediately as follows:
“Q. (By Mr. Harris) Mr. York, are you aware that Mr. Carter from 1972 until the present time, has some thirteen arrests?
“A. I am not aware of that many. I am aware that he had been arrested some.
“BY MR. LEWIS: Objection, Your Hon- or. A while ago, the prosecutor stated eleven. Now, he’s going up to thirteen. I wish you would get his figures down straight.
“THE COURT: Overruled. Is that the grounds? Overruled.
“MR. LEWIS: Yes, sir.
“Q. (By Mr. Harris): Are you aware that he was arrested in 1975 for aggravated assault with intent to murder?
“A. Yes, sir.
“Q. Arrested in ’76 for burglary?
“A. No, sir.
“Q. Arrested—
“A. I know I have read in the paper and heard of it, but that was — As far as I am concerned, that was hearsay.
“Q. What people say about him too is hearsay, isn’t it?
“A. Yes, sir.
“Q. Is what you testified your opinion of Mr. Carter, or what people think about him?
“A. I testified in my opinion.
“MR. HARRIS: Judge, I would move to exclude this man’s entire testimony. It is improper testimony.
“THE COURT: I will grant the motion then.
“Ladies and Gentlemen, the testimony of this witness, he was asked if he knew the reputation of the defendant’s truth and veracity, and, he said, he did. But now, then, he says that his testimony was his opinion and not based on the man’s reputation for truth and veracity.
“Therefore, his testimony would not be admissible evidence for you to consider, and, therefore, I instruct that his evidence is excluded. And, you will not consider the evidence of this witness in your deliberations.
“THE COURT: Anything further?
“MR. LEWIS: No, sir, Your Honor.
“MR. HARRIS: Nothing from me.
“THE COURT: Thank you, sir.
“(Witness excused).”
We are favorably impressed by the testimony of Mr. York and think that it was unfortunate that it had to be excluded from the consideration of the jury, especially so in that it had to be excluded on motion of the State after cross-examination had commenced. However, no one is to be blamed therefor. It is reasonably clear from the transcript quoted above that the testimony of the witness was subject to a valid objection to the effect that he was giving his own opinion as to “the witness’s own favorable opinion of accused’s character” for truth and veracity rather than basing it upon the reputation for truth and veracity that defendant had in the community where he had lived. The only opinion cited by appellant in support of his fourth contention for reversal is Adams v. State, 33 Ala.App. 136, 31 So.2d 99, which does not support appellant’s contention. Perhaps one or both of the parties on the trial could have made it clearer by more distinct questions to the witness as to whether he was basing, his testimony on his own personal opinion he had formed from his observation of and *1366 dealings with defendant as distinguished from his opinion as to defendant’s reputation among those in the community where defendant lived, but we are convinced that the trial court was not in error in ruling as it did. This conclusion is in accord, we think, with the correct principle stated in Gamble, McElroy’s Alabama Evidence, § 26.01(4) (1977):
“A person’s character, offered as tending to prove his conduct on a specified occasion, is not provable by the opinion of a witness, no matter how well the witness knows, or how intimate the witness’ association with, such person.... Even in the cross-examination of a State’s witness who has testified to accused’s bad general reputation, the accused may not elicit the witness’ own favorable opinion of accused’s character.
“There is one exception to the general rule excluding a witness’ opinion as to another person’s character. If a witness testifies to such other person’s general reputation as a whole or with respect to truth and veracity for the purpose of impeaching or supporting the credibility of such other person as a witness, the witness may testify further that from such reputation he would or would not believe such person under oath; or would or would not believe such person under such oath in a case in which such other person was personally interested.”
The statement just quoted is clear enough, but it does not in and of itself afford a solution to the question now under consideration, for the reason that during the direct examination and the cross-examination of the witness no reference was made to the “general reputation” of the defendant for truth and veracity but invariably the reference was to his “reputation” for that particular trait of character. As a result, the ruling of the trial court as set forth above is somewhat ambiguous in that it does not absolutely preclude the possibility of an interpretation that a qualified witness cannot give his opinion as to the general reputation of another witness for truth and veracity. There would be no such ambiguity in the ruling if all concerned had had in mind that which is correctly stated by Judge McElroy in the second paragraph of § 26.02(3) and as to what he wisely warns against in the first sentence of § 26.02(4), respectively, as follows:
“Testimony of a person’s general reputation is opinion-hearsay evidence. Such testimony, in essence, is the witness’ opinion as to what the general opinion of the community is concerning such person based on what the witness has heard or on what he has not heard.
[[Image here]]
“In proving a person’s general reputation, the question to the character witness should be directed to the ‘general reputation’ or ‘general 'character’ of such person .... ”
Any ambiguity in the reason stated by the trial court for its granting the motion of the State to exclude the testimony of Mr. York is at least matched, if not excelled, by the ambiguity of the testimony of the witness as to whether he was testifying that defendant’s reputation in the community for truth and veracity was based on what he had learned from others or, on the other hand, was based exclusively on his dealings with the defendant and members of “the Carter Family and Kathy Gospel Singing Group” from 1970 until 1976. We believe that this question could have been clarified by further questions propounded to the witness, but we are not persuaded that the result would have been favorable to the defendant. Our conclusion is that the trial court did not commit error prejudicial to defendant in excluding the testimony of the witness on the motion of the State.
A final issue presented by appellant is as to the refusal of defendant’s requested Charge No. 4, which reads:
“I instruct you that you the Jury may regard a witness for prosecution as an accomplish [sic] of defendant. I charge you that this witness’s testimony should be received with caution and weighed with great care.”
In support of this contention, appellant relies upon what was stated in United States *1367 v. Stanley, 433 F.2d 637, 639 (5 Cir.1970), as follows:
“... It is well settled that the uncorroborated testimony of an accomplice is sufficient to support a conviction in the federal courts. Williamson v. United States, 5 Cir.1966, 365 F.2d 12, 14. When the testimony of an accomplice is received, however, it is proper that the court instruct the jury that the testimony is to be received with caution. Smith v. United States, 5 Cir.1965, 343 F.2d 539, 544-545. In this case the trial court considered the possibility that the jury might regard El-more an accomplice to the offense and properly charged that Elmore’s testimony should be received with caution and weighed with great care. Of course, the credibility of witnesses and the weight of the evidence are issues committed to the jury; it is not the function of this Court to resolve those issues. Williamson v. United States, supra; Gorman v. United States, 5 Cir.1963, 323 F.2d 51, 52.”
It is indicated by the record before us that defendant’s requested Charge No. 4 was a photocopy of something. For that reason, we conclude that the word “accomplish” is not a mere mistake in copying the charge and that the word “accomplice” was not in the charge marked “Refused” by the trial judge. This, of itself, justifies its refusal. However, we go further in stating that, as the first sentence of the above quotation from United States v. Stanley discloses, the federal law as to the testimony of an accomplice is in conflict with the law of Alabama, in that in federal cases there can be a valid conviction on the uncorroborated testimony of an accomplice. The trial court properly charged the jury in its oral charge that “a person who aids and abets another in the commission of a crime would be an accomplice and a conviction for a felony offense cannot be had on the testimony of an accomplice or of numerous accomplices, unless such testimony is corroborated by other evidence tending to connect the defendant with the commission of the crime.” The court also orally charged the jury:
“You may, in this process, observe the attitude and demeanor of each witness and you may take into consideration the interest or the lack of interest that a witness has in the outcome of the case.”
In our opinion, the language of defendant’s requested written Charge No. 4 was defective not only by reason of the language “the Jury may regard a witness for prosecution as an accomplish of defendant” but also for singling out the testimony of an accomplice or accomplices for undeserved emphasis, by stating that it “should be received with caution and weighed with great care.” The trial court was not in error in refusing defendant’s requested Charge No. 4.
The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur, except BOWEN, P.J., who concurs in the result only.