LEIGH M. CLARK, Retired Circuit Judge.
This is an appeal from the following order signed by the judge of the “JUVENILE COURT OF TUSCALOOSA COUNTY, ALABAMA.”
“THE STATE OF ALABAMA IN THE JUVENILE COURT OF TUSCALOOSA COUNTY
"IN THE MATTER OF:
CASE NO. JU 82 343
“PAUL HAWTHORNE
“A Child Under 18 Years of Age
“ORDER
“TRANSFER OF CHILD TO CIRCUIT COURT FOR CRIMINAL PROSECUTION”
“This cause coming on to be heard on a motion filed by the prosecutor on 9th day of November, 1982, and the child is now before the Court represented by an attorney, and the Court finds that:
“1. The child was 14 or more years of age at the time of the conduct charged and is alleged to have committed an act which would constitute a felony if committed by an adult;
“2. There is probable cause for believing that the allegations of the petition in this case are true and correct.
“And the Court being of the opinion that the interest of justice and public welfare would be served by transferring said cause and said child to the Circuit Court of Tuscaloosa County, Alabama, as provided for under Alabama Law Act 1205, Article 5, Section 129.
“IT IS THEREFORE, THE ORDER, JUDGMENT AND DECREE OF THE COURT that the said child be transferred from the Tuscaloosa County Juvenile Court to the Circuit Court of Tuscaloosa County, Alabama, so that the conduct charges can be dealt with under the applicable law of the Criminal Court of the State of Alabama.
“It is the further order and judgment of the Court that those complaints, petitions, legal actions and others pertaining to Paul Hawthorne Case No. JU 82 343 be forthwith transferred to the Circuit Court of Tuscaloosa County, to become a *1099 part of the records of the said Circuit Court Clerk.
“DONE AND ORDERED this the 27th day of April 1983.”
Appellant, by reason of his indigéncy, was represented in the trial court by an attorney of the Office of Public Defender of Tuscaloosa County. The record on appeal contains a number of lengthy items which, on motion of appellant’s attorney, have been ordered by the trial court to be “stricken from the record.” In accordance therewith, we will forego consideration thereof in rendering this opinion.
The issue as to whether the case should be transferred from the Juvenile Court to the Juvenile Division of the Circuit Court, was vigorously argued by the attorneys for the respective parties and obviously given careful consideration by the trial judge, in connection with the testimony of the only witness at the hearing, a probation officer who had investigated the case. Pertinent portions of his testimony were as follows:
“Q. Briefly, could you tell the Court what your summary of the nature of this present offense involved is and what it is?
“A. Yes, sir. Of course, the present offense alleged involves a matter of property of rather high value amounting to $825. From looking at the reports, the best I can understand the reports, the incident itself happened approximately 2 months and 1 week before Paul Hawthorne’s 18th birthday. It was stemming out of a work-type of situation where Paul had been employed working with Mr. Grant, using some fishing nets and later those nets were found to be missing. Based on that and my conversations with Paul, meeting Paul and his móther and knowing that Paul dropped out of school while in the 8th grade and since that time assumed an adult-type life-style, that being since 1979, keeping employment and not attending school, not living with the life-style of a juvenile, based—
[[Image here]]
“ — and based on his life-style and -his physical size, my conversation with him which was that he said to me that he would rather be handled as an adult than as a juvenile, I would recommend £hat his case be transferred to Circuit Court for further hearing.
“Q. Now, could you more specifically delineate those reasons as to why you recommend that he be transferred?
“A. Well, this is Juvenile Court. Our problems are set up to work with juveniles. I don’t think that Paul Hawthorne is a juvenile nor has been engaged in a juvenile life-style for some time. And I personally don’t think that we really have anything to offer to Paul in the way of rehabilitation if he did in fact commit the offense.
“Q. Do you think that the best interest of the community and of the child would best be served if this child is transferred?
“A. Yes, sir.
[[Image here]]
“Q. Were there other individuals involved in this case?
“A. Other individuals were mentioned, yes, sir. I don’t know about their—
“Q. The facts show that others were fishing with the nets and what have you?
“A. Yes, sir.
“Q. Okay. And was one of those — [given name and surname omitted here]”
“A. Yes, sir.
“Q. And do you know his age?
“A. No, sir.
“Q. Okay. Are you also aware that he’s in the penitentiary serving several felony charges?
“A. No, sir.
“Q. Okay. Are you aware that the other individual that was with him was an older man, also?
“A. Yes, sir.
“Q. Okay. Has Paul ever been in trouble before?
“A. No, sir. Other than — The only thing we have ever had any report on *1100 was some truancy problem back, as I said, several years ago.
“Q. So, other than this incident, he’s been fairly law abiding, then?
“A. Yes, sir. We don’t have any record.
[[Image here]]
“Q. Okay. So, he is below average intelligence?
“A. Yes, sir.
“Q. Did he also appear below average intelligence when you talked to him?
“A. Yes, sir.”
The transcript further shows that the alleged crime occurred on June 9, 1982.
The disputed issue on appeal is whether the trial court complied with Code 1975, § 12-15-34(d), (f) as follows:
“(d) Evidence of the following and other relevant factors shall be considered in determining whether the motion shall be granted;
“(1) The nature of the present alleged offense;
“(2) The extent and nature of the child’s prior delinquency records;
“(3) The nature of past treatment efforts and the nature of the child’s response to such efforts;
“(4) Demeanor;
“(5) The extent and nature of the child’s physical and mental maturity; and
“(6) The interest of the community and of the child requiring that the child be placed under legal restraint or discipline.
“(f) When a person is transferred for criminal prosecution, the court shall set forth in writing the reasons for granting the motion, which shall include a finding of probable cause for believing that the allegations are true and correct.”
No contention has been made by defendant-appellant that there is not probable cause for believing that he committed the offense of theft in the second degree, a Class C felony.
We agree with appellee that we should not interfere with the trial court's order transferring the case from the Juvenile Court unless the order is clearly erroneous. Mayne v. State, Ala. 416 So.2d 741 (1982); Duncan v. State, Ala., 394 So.2d 930 (1981); Williams v. State, Ala., 361 So.2d 1157 (1978). Although the record before us does not clearly show that the trial court considered every one of the six factors that Section 12-15-34(d) of the Alabama Code requires, we are not persuaded thereby that it did not in fact consider all of them. Furthermore, in our opinion the lengthy comments of the trial judge as set forth in the court reporter’s transcript as his reasons for transferring the case are the legal equivalent, at least in the absence of a definite request for his statement in writing, of essential compliance with the “in writing” requirement of § 12-15-34(f).
Notwithstanding our conviction that the trial judge gave studious, careful and conscientious consideration of the problem presented to him, we are convinced that the transfer of the case from the Juvenile Court was clearly erroneous. The oral recitals of the trial judge on the point are too lengthy for an appropriate inclusion in this opinion, but we include the concluding portion of his comments as follows:
“Frankly, I don’t know what we can do with Paul. He does not fit any of the usual categories of children who come in front of this Court. He is like a square peg in a round hole, and I don’t mean that adversely. You know, he isn’t all juvenile. You know, you can look at it that way. There are some advantages for keeping him here and there are some advantages for transferring. The problem gets down to, I think, being resources of where he could be best utilized. And I know in adult court there are other things available and he has youthful offender status in the first place, and his alleged co-defendant, if there have been two adults involved, and given his malleability or his deficiency in being able to assert his own identity based on his mental abilities, he may have a handicap there. There are a lot of mitigating circumstances that would, I *1101 think, be better aired at the adult court level than here. I don’t think some of those are just — certainly youthful offender status is available to him which would be a probation-type thing and restitution, all of those things are possible in adult court. I assume that Mr. Grant would like to have restitution for the damages he has lost as well as whatever else is necessary.
“I am going to transfer him to adult court simply because I just don’t think we have the resources at our level to deal with him. And in doing so, it’s not my intention that he be incarcerated, I want him out and let him continue to work with the public defender and in making some kind of disposition of this case. I think he is very definitely eligible for youthful offender status which would be almost identical to being under the supervision of probation under the Juvenile Court but he would be treated more as an adult, which is what he would prefer, I think, that he doesn’t want to be held too close to home at his age and stage in life. The fact that he may not be the smartest kid in the world does not mean that he does not have individual aspirations and things and wanting to be his own person, and he is certainly not so deficient that he can’t recognize that. But in sending him to adult court, I want to be sure that he is not incarcerated. And if it is necessary for him to sign himself out or his mother sign him out on a bond for his appearance in adult court—
“[There then intervened a conference among the trial judge, the probation officer, and the attorneys that apparently resulted in a satisfactory handling of the question as to a bond].
“THE COURT: ... And generally, I think what would happen — I can’t guarantee this, but I think what would happen is that he would be treated as a youthful offender, which is effectively the same thing as a juvenile; that is, he has no permanent record if he goes straight and all that good stuff. It has as simple effect as this, but given his age and all, I think that he would fare better than from the resources — They have access to things I don’t have access to. I think he would be better with them than me. There is just a limit to what juvenile court can do. I have got some that are too young and I have got cases like him that are really too old and too big to be effectively rehabilitated through the system, and that is not his fault. If it had been two months later, you would have already been in adult court. So I’m not saying I’m not real pleased with that because it just puts me in the position of choosing the lesser of evils, quite frankly. There is not a real clear-cut way to go either way.
“So, I think that just look at all things considered, there are more positive things on that side rather than detaining him in Juvenile Court, and I would ask y’all to just wait out in the hall just a minute and let me get this bond business worked out because I don’t want him to go to jail. Y’all just wait out in the hall. Dennis, would you go do what is necessary on that, please, sir?
“MR. STEVERSON: Yes, sir.
“(Whereupon, the previously-styled hearing was concluded at 11:30 a.m. on April 27, 1983.)”
Entering into our determination that the transfer of the ease as a case of juvenile proceedings to a non-juvenile division of the Tuscaloosa Circuit Court for prosecution as a criminal case against appellant was erroneous is the fact that the proceeding had already been pending in the juvenile division for more than eight months, it having been instituted on the basis of an affidavit by the alleged victim of the theft dated July 29, 1982, that at least eight separate items of fishing nets were the specific objects of the alleged theft, that the transcript discloses that two persons other than defendant, older than he, were participants in the theft and that a serious issue could conceivably be presented not only as to whether defendant was guilty of any participation, but also as to whether, if guilty, he was guilty of participation only *1102 as to the theft of some item or items of less value than $100.00, which would not constitute a felony but a Class A misdemeanor. Criminal Code, § 13A-8-5. A conviction thereof would constitute a conviction of a crime involving moral turpitude and would thereby cause a stain upon appellant’s record that would be avoided by the letter and the spirit of a juvenile proceeding. In addition, the sincere and well-intentioned view of the probation officer and the trial judge tend to stem to some extent at least from some expressions of the probation officer to the effect that the appellant had stated that he “preferred” to be treated as an adult. We can understand that he could have well made such a statement but that he did not mean thereby that if the decision were left to him he would remove the case from the juvenile court to a court where a criminal prosecution against him would ensue. We doubt that many, if any, juveniles in their right mind would make such an election.
We are also impressed by the fact that the prosecutor, the victim of the alleged theft who signed the affidavit instituting the proceeding in the juvenile court, did not “file a motion requesting the court to transfer the child for criminal prosecution” as required by Section 12-15-34(a). The motion to transfer, as shown by the motion itself, was made by “the State of Alabama ... Assistant District Attorney of the Sixth Judicial Circuit of Alabama” and was signed by said Assistant District Attorney. The transcript indicates that the alleged victim took no part in the hearing of the motion.
Although we are convinced that the trial judge believed it was for the best interest of the appellant, as well as the public, that the case be transferred so that a criminal prosecution would be commenced against this appellant, we are unable to reach such a conclusion on the basis of the record before us.
We do not overlook the possibility, or even the likelihood, of knowledge by the trial judge of matters not revealed by the record that would afford sufficient basis for the transfer, which possibility or likelihood is doubtless the main reason for the sound principle, well established, that his order should not be disturbed unless it is clearly erroneous. Nevertheless, in the full light of all that we have on the subject, we are convinced that the order transferring the case is clearly erroneous. We further realize that conditions may have changed to such an extent, or that conditions then were known.to the trial judge that are not now disclosed by the transcript, that would justify transfer of the case so that a criminal prosecution could be commenced against appellant, and for such reason we decline to render a judgment overruling the motion to transfer. The judgment should be reversed and the cause remanded to the trial court with directions that any proceedings as to any further effort to effectuate a transfer of this case to the Circuit Court for criminal prosecution of this appellant shall be consistent with this opinion.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. ■ 328); his opinion is hereby adopted as that of the Court.
REVERSED AND REMANDED.
All the Judges concur, except BOWEN, P.J., who dissents.