Wayne Duncan, a juvenile, appeals from an order transferring his case from the juvenile division to the criminal division of the Jefferson County Circuit Court for prosecution as an adult on the charge of robbery-murder. He specifically contends that there was not sufficient evidence presented at the hearing on the motion to transfer to warrant a finding of probable cause. We affirm the trial court's decision.
At the hearing on the motion to transfer, the parties stipulated to the following:
 On July the 2d 1977, at approximately 2:20 in the morning the body of James Thomas Moore, white male, was found in the 1900 Block of Fourth Avenue North; that he is deceased; and that the cause of death resulted from stab wounds or what appeared to be stab wounds. . . .
Wayne Duncan was charged with the robbery-murder of James Thomas Moore.
The State's first witness was Bobby Joe Mack, a juvenile who served time with Duncan in the juvenile detention center in August 1977. Mack recalled that while he and Duncan were in detention, Duncan came to him and told him that he (Duncan) had a problem and needed to talk to someone about it. Mack stated that Duncan proceeded to tell him that he had followed a white man into an alley in downtown Birmingham, intending to rob him, but that they had "had a tussle," and Duncan had stabbed the man to death. Mack related that Duncan said he took seven or eight hundred dollars and a gold watch from his victim. Mack also recalled Duncan saying that he threw the knife he had used upon a building.
Mack testified that about a month and a half after seeing Duncan in the detention facility, he was sent to Mt. Meigs, where he again served time with Duncan. At Mt. Meigs, Mack said that Duncan showed him two gold watches, one of which Duncan told him belonged to his murder victim. No watch was introduced into evidence.
On cross-examination Mack stated that he was presently residing in Draper Prison after a conviction for grand larceny and buying and receiving stolen property. Mack further revealed that he did not tell anyone about Duncan's confession until a Bessemer policeman, Officer Sisco, showed him (Mack) a statement made by Duncan which accused Mack of murdering someone. Mack also testified that Sisco told him that he believed Duncan had done the robbery-murder, and that "somebody was going to take the rap, me or him," meaning Mack or Duncan.
In addition to Mack's testimony, the State showed that the deceased had received and cashed his paycheck on Friday, July 1, prior to his death in the early morning hours of July 2. The deceased had visited a bar on the night of Friday, July 1, where he was "flashing money around." He left the bar around 1:00 a.m. and his body was discovered a few blocks away about 2:20 a.m. The deceased's wallet was not found with the body, but was discovered two blocks from the body and was turned in to police as lost and found property.
The State offered the testimony of two auxiliary policemen, both of whom testified that on the night of Saturday, July 2, 1977, the night after the murder, the defendant, Wayne Duncan, was present in the alley where the deceased's body had been found and that the defendant tried to lead one of them down that alley. The officer did not follow him more than 10-12 feet into the *Page 932 
alley. One officer testified that he knew there had been a murder in that alley the night before, and he believed that the ploy used by the defendant, of luring people into the alley, could have been the same action used in the murder of Mr. Moore the previous night.
Based on the above evidence, the trial court granted the motion to transfer Duncan to the criminal division of the Jefferson County Circuit Court.
The order of the trial court was made pursuant to Code of 1975, § 12-15-34, and correctly reflects a consideration of the six factors in § 12-15-34 (d), which are required to be considered prior to granting a transfer motion. See Young v.State, Ala., 387 So.2d 825 (1980). In addition to those six considerations, § 12-15-34 (f) states:
 When a person is transferred for criminal prosecution, the court shall set forth in writing its reasons for granting the motion, which shall include a finding of probable cause for believing that the allegations are true and correct. [Emphasis added.]
Thus, a trial court can grant a motion to transfer only after considering the six factors in § 12-15-34 (d) and expressly finding that there is probable cause to believe the allegations or charges against the child are true.
Here the trial court did specifically find probable cause to exist. The only issue on appeal is whether sufficient evidence was presented at the hearing to support the finding of probable cause.
A hearing on a motion to transfer has been said to be properly classified as a probable cause hearing. Winstead v.State, Ala., 371 So.2d 418 (1979); Brown v. State, Ala.,353 So.2d 1384 (1978). Such a hearing is not designed to determine the guilt or innocence of the child accused of the crime, but is instead a hearing to determine whether the child should be transferred out of the juvenile court for criminal prosecution as an adult. Brown, supra. The finding of probable cause is an essential element of the decision to transfer.
Probable cause has been defined by this Court as that which would "warrant a man of reasonable prudence and caution in believing that the offense has been committed and that the person in question is the offender." Vincent v. State, Ala.,349 So.2d 1145 (1977).
Since the purpose of a hearing of this type is not to determine guilt or innocence, the strict standard of proof beyond a reasonable doubt has been held not to apply. Brown,supra. The only standard which must be met is whether a reasonable man would believe the crime occurred and that the defendant committed it. This Court has further held that we will not interfere with a lower court's order transferring a juvenile to circuit court unless that order is clearly erroneous. Williams v. State, Ala., 361 So.2d 1157 (1978).
Although we find the evidence to be far from overwhelming, we recognize that this hearing was not one at which guilt had to be proven beyond a reasonable doubt. Since there was some evidence on which the trial judge could base his finding that probable cause existed, we cannot say that his determination was clearly erroneous.
Let the judgment be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur. *Page 933