[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 997 
In March of 1983, Whisenant, a juvenile, was charged in a three-count petition with the murder of Alan Frix, with the third degree burglary of Frix's residence, and with the first degree theft of Frix's automobile. Separate transfer hearings were held on the counts charging murder and burglary. The same testimony was relied on in both hearings. At the conclusion of each hearing, the juvenile court judge granted the State's motion to transfer Whisenant to the circuit court for criminal prosecution as an adult. In each case, the judge set forth in writing her reasons for granting the motion, in full compliance with Alabama Code Section 12-15-34 (f) (1975). The two cases are consolidated on appeal.
 I
The orders of the juvenile court judge transferring Whisenant for criminal prosecution positively reflect that she considered the relevant factors listed in Section 12-15-34 (d). Duncan v.State, 394 So.2d 930 (Ala. 1981). Although she specifically found that "it is in the best interest of the community and of the child that the State's petition be granted", Whisenant argues that "all the testimony presented at the hearing, . . . consistently maintained that the child and community would be best served by handling the case in the juvenile court."
Our review of the record shows that the evidence on this issue was conflicting. The juvenile probation officer, Joe Motley, who prepared the study and report (Profile of Youth) required by Section 12-15-34 (e), recommended that Whisenant be prosecuted as an adult. His report concluded:
 "Due to the severity of his crimes and the relative short time span in which *Page 998 
they took place it is recommended that Whisenant be certified as an adult and transferred to adult court for criminal prosecution. It is felt that the interests of the community and child would be best served in this manner."
At one point in his testimony at the transfer hearing, Motley did indicate that the juvenile would "be better off in youth services until he is 21" than in going to the state penitentiary. However, both before and after he had given that response, he repeatedly testified that it would be in the best interest of society to certify Whisenant as an adult rather than to keep him in juvenile court.
Three Huntsville residents, who knew Whisenant personally, testified that the juvenile was immature for his age and should be treated as a juvenile.
The decision to transfer a juvenile for prosecution as an adult is a judicial one, Reeves v. State, 419 So.2d 217, 218
(Ala. 1982), involving a mandatory consideration of each of the factors enumerated in Section 12-15-34 (d). Gulledge v. State,419 So.2d 219 (Ala. 1982); Mayne v. State, 416 So.2d 741 (Ala. 1982); Bragg v. State, 416 So.2d 715 (Ala. 1982); McKinney v.State, 404 So.2d 639 (Ala. 1981). While "legislation compels consideration of each of the six factors", Reeves, 419 So.2d at 218, the weight to be given each of those factors in balancing the interests of the juvenile and society must be left to the sound discretion of the juvenile court judge. Even though some
of the factors may indicate that it would be in the best interest of the child and the public to treat the youth as a juvenile, the judge may still order treatment as an adult after weighing all the factors and circumstances involved.
 "It is not necessary that all the factors be resolved against the juvenile in order to justify the waiver of juvenile court jurisdiction, nor is it necessary that the court make an arithmetic calculation as to the weight to be assigned to each factor, but all factors must be considered. The court is not bound by the recommendations of public agencies . . . ." 43 C.J.S. Infants Section 46 (1978).
"(T)he final determination of whether to transfer the minor for criminal prosecution must be made by the juvenile court judge, and not by the state's attorney, probation officer, experts, or a parent." 43 C.J.S. Infants Section 48. The judge can make that determination only after considering and weighing each and every factor listed in Section 12-15-34 (d).[1]
In reviewing an order transferring a juvenile to the circuit court for criminal prosecution as an adult, this Court is limited to considering whether the juvenile court abused its discretion considering the totality of the circumstances involved. "In reviewing the record, this court has held that it will not interfere with a lower court's order transferring a juvenile to circuit court unless that order is clearly erroneous." Mayne v. State, 416 So.2d 741, 742 (Ala. 1982). "The question involved on such review is not whether the reviewing court would reach a different conclusion, but whether the decision reviewed has a rational basis and is not arbitrary or capricious." 43 C.J.S. Infants Section 49 (b). Neither this Court nor our Supreme Court will interfere with the transfer order of the juvenile court unless it is "clearly erroneous".Williams v. State, 361 So.2d 1157 (Ala. 1978). *Page 999 
Our review convinces us that the juvenile court judge made a careful and conscientious determination that the case should not be handled in the juvenile system. Her findings are supported by evidence and are due to be affirmed by this Court.Bragg v. State, 416 So.2d 715 (Ala. 1982); Duncan v. State,394 So.2d 930 (Ala. 1981).
 II
Whisenant contends that because there was no evidence presented at the transfer hearing to corroborate his confession, the juvenile court judge could not make a proper finding of probable cause.
Under Alabama Code Section 12-15-66 (b), "(a)n extrajudicial admission or confession made by the child out of court is insufficient to support a finding that the child committed the acts alleged in the petition unless it is corroborated by other evidence." The juvenile court judge held that this section did not apply to a transfer hearing which involves a finding of probable cause and not a determination of guilt. See Vincent v.State, 349 So.2d 1145 (Ala. 1977), wherein our Supreme Court determined that the uncorroborated testimony of an accomplice was sufficient basis for finding probable cause. See alsoGulledge v. State, 419 So.2d 219 (Ala. 1982); Armstrong v.State, 294 Ala. 100, 312 So.2d 620 (1975).
Here, as in Ash v. State, 424 So.2d 1381, 1387 (Ala.Cr.App. 1982), the juvenile's confession was "self-verifying and corroborated by the physical details of the crime itself and the location of the (victim's) body. The circumstances of the homicide are such that only the perpetrator would have had knowledge of the details of the crime." In such a situation, probable cause to believe that the juvenile committed the crimes alleged in the petition is not supplied solely by the juvenile's uncorroborated confession.
 III
Whisenant also argues that there was insufficient evidence presented at the transfer hearing to support a finding of probable cause as to the burglary charge. We disagree.
The only standard of proof which must be met in order to support the transfer of a juvenile to the circuit court for adult criminal prosecution is "whether a reasonable man would believe the crime occurred and that the defendant committed it." Duncan, 394 So.2d at 932. The evidence need not be "overwhelming" and "guilt" need not be proven beyond a reasonable doubt. Duncan, 394 So.2d at 932.
Evidence of the burglary was provided by Whisenant's confession with corroboration by an investigating officer. In his handwritten statement, Whisenant admitted his crimes:
 "I got to Alan Frix house about 9:15. I shot out the glass and opened the back door went inside the house smoked me a cigarette turned on the T.V. and sat down in the chair in the den. Went into the master-bedroom got cleaned up went back to the den and smoked another cigarette and watched T.V. Then I heard him pull up and I took the gun and went into one of the bedrooms and waited. He came in through the hall and said, `Darrell, I know your in here, so come out.' I then waited until he turned around and shot him once, the once again. I then ran to the kitchen and got a steak knife. I ran back to the hall and threw down the knife and hit him over the head 2 times with the pistol then shot him 4 more times. I then dragged him to the bedroom and searched him and took money, lighter, and car keys. I put him behind the bed and wall, locked the door, put a bathroom mat over bloodstains in hall. Got duffle bag, coats and left."
In another statement, Whisenant admitted that he went in the house with the intention of killing Alan Frix.
At the transfer hearing on the burglary charge, it was stipulated that Detective Harry Renfroe, Jr. would testify that "a window in the rear door of that residence had been broken out and that a quantity of *Page 1000 
glass was found adjacent to the window on the inside of the door and that that door was open."
The victim was killed sometime after 9:00 on the morning of March 17, 1983. The victim's car was located and stopped shortly after 10:00 that same night. Whisenant was driving. "The possession of goods recently stolen in burglary affords a logical inference that the possessor — without a satisfactory explanation — was the burglar." Miller v. State, 43 Ala. App. 287,289, 189 So.2d 576, cert. denied, 280 Ala. 715,189 So.2d 580 (1966).
This evidence is more than sufficient to supply probable cause to believe that Whisenant "did, knowingly enter or remain unlawfully in a building of Alan Frix, . . . with intent to commit a crime therein to-wit: Theft of Property" as charged in the petition. The fact that this same evidence also supplies probable cause to believe that Whisenant is guilty of burglary in the first degree (Section 13A-7-5), and perhaps even the capital offense of murder by the defendant during a burglary in the first degree (Section 13A-5-40 (a)(4)), does not detract from the sufficiency of the evidence to support a finding of probable cause regarding burglary in the third degree as charged. Moreover, under Section 13A-7-7, which defines burglary in the third degree as knowingly entering or remaining unlawfully in a building with intent to commit a crime therein, Whisenant could have formed the intent to commit a theft once he was already inside the victim's residence.
The evidence presented at the transfer hearing affords probable cause to believe that Whisenant committed the charged burglary. The practical, commonsense judgment called for in making a probable cause determination "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. . . . (T)he relevant inquiry is not whether particular conduct is `innocent' or `guilty', but the degree of suspicion that attaches to particular types of non-criminal acts." Illinois v. Gates, 462 U.S. 213,103 S.Ct. 2317, 2335 n. 13, 76 L.Ed.2d 527 (1983).
 IV
Whisenant contends that his confessions should have been suppressed because he was not fully advised of his rights underMiranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694
(1966), was not advised of his right to communicate with his parents, and was not taken to the juvenile authorities "with all possible speed" following his arrest. He also contends that an examination of the totality of the circumstances reveals that there was no knowing, intelligent, and voluntary waiver of his constitutional rights. Specifically, it is argued that Whisenant was not advised that "he can stop talking at any time if he once starts"; was "not encouraged to contact a friend, relative, lawyer or other person"; was persistently interrogated "without regard for his anxious statements about being cold, nervous, scared"; was barefoot, sleepy, intoxicated, sick to his stomach and dizzy; and was held incommunicado.
The determination of the admissibility of statements obtained from a juvenile during custodial interrogation is made upon "an inquiry into the totality of the circumstances surrounding the interrogation, to ascertain whether the accused in fact knowingly and voluntarily decided to forego his rights to remain silent and to have the assistance of counsel." Fare v.Michael C., 442 U.S. 707, 725, 99 S.Ct. 2560, 2572,61 L.Ed.2d 197 (1979).
 "The totality approach permits — indeed, it mandates — inquiry into all the circumstances surrounding the interrogation. This includes evaluation of the juvenile's age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights." 442 U.S. at 725, 99 S.Ct. at 2572.
For a discussion of a juvenile's waiver of his constitutional rights, see S. Davis, Rights Of Juveniles Section 3.13 (1982 *Page 1001 
revision); T. Grisso, Juveniles' Waiver Of Rights (1981); McCarthy, Pre-Adjudicatory Rights In Juvenile Court. AnHistorical And Constitutional Analysis, 42 U.Pitt.L.Rev. 457 (1981); Harris, Children's Waiver of Miranda Rights And TheSupreme Court's Decisions in Parham, Bellotti, And Fare, 10 N.M.L.Rev. 379 (1980); Comment, The Judicial Response toJuvenile Confessions: An Examination of the Per Se Rule, 17 Duq.L.Rev. 659 (1978-79); Vogel, Custodial Interrogation OfJuveniles In The United States And Florida, 9 Fla.St.U.L.Rev. 157 (1981); Comment, Fare v. Michael C.: Blurring TheDistinction Between Minors And Adults In CustodialInterrogations, 12 Sw.U.L.Rev. 129 (1981).
Whisenant was arrested at approximately 10:15 on the night of March 17, 1983, and advised of his rights. He was taken to the Huntsville Police Department and given the Miranda warnings a second time. Questioning began at 10:46 and continued until 11:48. This interview was tape-recorded. We have reviewed both the recording itself and the transcript of that recording. At 11:52 that night Whisenant was given his Miranda rights a third time and gave a one-page handwritten statement which he completed at 12:06 on the morning of March 18th.
Homicide Investigator Harry Renfroe, Jr. testified that although the first portion of the tape recording is inaudible, Whisenant was given the Miranda warnings "from a card" and was informed of his "right to remain silent and that he could stop talking at any time he wants to."
There is evidence that Whisenant was emotionally immature for his age of sixteen years and seven months and that he was scared, cold, and nervous during at least a part of the interrogation. Yet, there is also evidence that the statements were not obtained by coercion or improper inducement. Whisenant's answers to the officer's questions are coherent, responsive, and detailed.
In her certification order, the juvenile court judge found:
 "With respect to his mental maturity, the Court observed that the child appeared mentally sound, able to recall events in detail, that he understood the serious nature of the charge against him, was alert and able to assist his counsel in his defense, and, with the exception of a habit of mumbling or speaking very softly, he was articulate and able to express his thoughts. The Court concludes that the child is mentally average for his age, but probably emotionally immature."
We have reviewed all the circumstances surrounding the interrogation of the juvenile. At the suppression hearing, Whisenant testified. His testimony conflicted with the testimony given by the State's witnesses on the issue of voluntariness. Where the evidence of voluntariness is conflicting, and even where there is credible testimony to the contrary, the trial judge's finding of voluntariness must be upheld unless palpably contrary to the weight of the evidence.Ash v. State, 424 So.2d 1381, 1385 (Ala.Cr.App. 1982).
The finding of voluntariness by the juvenile court judge is supported by substantial evidence and constitutes a reasonable interpretation of the evidence. Her finding is not contrary to the weight of the evidence and is due to be affirmed. Harris v.State, 280 Ala. 468, 195 So.2d 521 (1967).
 V
Whisenant alleges that his confession should not have been admitted at the transfer hearing because no law enforcement officer advised him that he could call his parents.
In this regard, Investigator Roper testified that Whisenant was advised that "You have the right to talk to a lawyer of your own choosing and may also have counsel present during any questions or statements you make." It does not appear that the juvenile was specifically advised that he had a right to communicate with his parent, or guardian, and that, if necessary, reasonable means would be provided for him to do so. *Page 1002 
The voir dire examination of Officer Roper by defense counsel reveals the following:
 "Q. (Defense Counsel): Did you let the defendant or ask the defendant if he wanted to call his mother or an attorney or some friend to be with him?
 "A. (Roper): When he was advised of his right, yes, sir. He was advised that he could have counsel or anybody else present with him before any statements he made."
And, later:
 "Q. Other than what is on the tape about the defendant's right, did you talk to him concerning calling his parents and having someone there or the meaning of the rights that were read to him or anything other than what is on the tape about his rights?
"A. No, sir.
"Q. Nothing else?
"A. No."
. . . .
 "Q. Did you allow him to call outside and talk to his mother?
"A. He didn't ask to, no, sir."
Whisenant testified in his own behalf that he was not told he could call his mother:
 "Q. (Defense Counsel): Did they ever tell you that you could call your mother?
"A. (Whisenant): No, sir.
 "Q. Did you ever tell them that you wanted to call your mother?
"A. No.
"Q. Did you want to call your mother?
"A. I wanted to but I was scared.
"Q. You were scared?
"A. I was scared of what my mother would say."
On cross examination by the prosecutor, Whisenant testified that he was embarrassed and scared to call his mother:
 "Q. Darrell, you told Mr. Hamilton a while ago that you did not call your mother because you were embarrassed or afraid or scared that she would be upset or whatever, is that right?
"A. I was scared.
 "Q. What was it that embarrassed you or made you scared of your mother?
 "A. I'm her only son, okay? I don't want to put my mom through that kind of stuff, alright?"
. . . .
 "THE COURT: Alright. If you will answer the question once again as to why you were embarrassed or scared to call your mother.
 "A. Because I am her only son and I want my mom to be proud of me. But I don't want to put her through that."
This was all the testimony presented on whether or not Whisenant was advised of his right to contact his parent or guardian.
We have determined that Whisenant was given a full and properMiranda warning. The crux of Whisenant's argument on this issue is that his confession should have been suppressed because he did not make a valid waiver of his rights inasmuch as the arresting and interrogating officers failed to advise him of his right to contact his parents.
"(V)irtually every court deciding the question has held thatMiranda warnings must be given to juveniles subject to custodial interrogation." Harris, Children's Waiver of MirandaRights, 10 N.M.L.Rev. 379, 397 n. 97 (1980). From a constitutional standpoint, the admissibility of the statement of a juvenile depends on whether it was voluntary in the sense not only that it was not the product of physical or psychological coercion, but also that it was not the result of ignorance of rights or of adolescent fantasy, fright, or despair. In re Gault, 387 U.S. 1, 55, 87 S.Ct. 1428, 1458,18 L.Ed.2d 527 (1967). In making that voluntariness determination, the United States Supreme Court has held that the totality of the circumstances approach is to be employed in determining whether statements obtained during custodial interrogation are admissible. "This totality-of-the-circumstances approach is adequate to determine whether there has been a waiver even where interrogation of juveniles is involved." Fare v. MichaelC., *Page 1003 442 U.S. 707, 725, 99 S.Ct. 2560, 2572, 61 L.Ed.2d 197 (1979). In Fare, for the first time, the Supreme Court considered whether theMiranda requirements should be modified when a juvenile is subjected to custodial police interrogation. Although the Supreme Court has never specifically held that Miranda warnings must be given to juveniles before police custodial interrogation, "(i)n Fare the Court assumed without deciding that Michael C. was entitled to Miranda's protections." Harris, 10 N.M.L.Rev. at 396 n. 97. Fare makes it clear that there is no constitutional requirement that a juvenile be warned of his "right" to communicate with his parent or interested adult before any custodial interrogation. See Comment, Fare v.Michael C.: Blurring The Distinction Between Minors And AdultsIn Custodial Interrogations, 12 Sw.U.L.Rev. 129 (1981).
The Alabama Rules of Juvenile Procedure "govern . . . all matters in the juvenile court." A.R.J.P. 1. Rule 11 sets out the rights of the child. Rule 11 (A) provides:
 "(A) When the child is taken into custody, he must be informed of the following rights by the person taking him into custody:
"(1) that he has the right to counsel;
 (2) that if he is unable to pay a lawyer and if his parents or guardian have not provided a lawyer, one can be provided at no charge;
 (3) that he is not required to say anything and that anything he says may be used against him; and
 (4) if his counsel, parent, or guardian is not present, that he has a right to communicate with them, and that, if necessary, reasonable means will be provided for him to do so."
Rule 21 is concerned specifically and exclusively with the admissibility of a juvenile's statement. That rule does not mention the "right" of the juvenile to communicate with his parent. Rule 21 provides:
 "An extrajudicial statement made by a child may be admissible if given by the child in accordance with the requirements of the Constitution and the prevailing case law as expressed by the appellate courts."
We know of no absolute requirement which necessitates the presence of a parent or other interested adult in order for a juvenile to make an effective waiver. A child is not incompetent, for the reason of age alone, to waive his rights by himself. S. Davis, Rights Of Juveniles Section 3.13 (1982 revision). Neither Rule 11 nor Rule 21 requires that a juvenile actually be advised by counsel or parent before waiving his rights. Ash v. State, 424 So.2d at 1386. Alabama Code Section 12-15-67 (1975), making inadmissible the statements of a child unless advised by counsel, was repealed by Ala. Act 1981, No. 81-344, p. 500, effective April 29, 1981.
Under the totality-of-the-circumstances test for determining voluntariness, whether or not the juvenile has been allowed to consult with relatives, friends, or his attorney is one of the several factors to be considered in determining the validity of the juvenile's waiver. West v. United States, 399 F.2d 467 (5th Cir. 1968).
We have already determined that Whisenant's confession was admissible and satisfied the constitutional requirements ofMiranda. Consequently, we also find that the confession was admissible under Rule 21.
Rule 11 became effective January 16, 1977. Rule 21 became effective March 1, 1982. Since Rule 21 specifically deals with the admissibility of a child's confession and since it is the last and latest expression of our Supreme Court on this question, we deem it controlling. Since there is no constitutional requirement that a child be advised of his right to communicate with his parent, or guardian (which we distinguish from his constitutional right to communicate with his attorney, Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966)), and since this "right" has not been made a requirement by "the prevailing case law as expressed by the appellate courts", we find that Whisenant's confession was properly admitted even *Page 1004 
though it appears that he was not advised under Rule 11 that he had "the right to communicate with his counsel, parent, or guardian, and that, if necessary, reasonable means would be provided for him to do so."
In reaching this conclusion, we have placed emphasis upon the fact that the confession was admitted in a transfer hearing. "(T)ransfer hearings are in the nature of probable cause hearings and that being so, the strict rules of evidence do not apply." Winstead v. State, 371 So.2d 418, 420 (Ala. 1979). InWinstead, our Supreme Court held that a voluntary confession was admissible in a transfer proceeding, even though no attorney was present at the time the confession was made in violation of the then-effective Section 12-15-67 requirement that "(u)nless advised by counsel, the statements of a child . . ., shall not be used prior to a determination of the petition's allegations in a delinquency or in need of supervision case or in a criminal proceeding prior to conviction." The court distinguished a transfer proceeding from a criminal prosecution. "Since a transfer hearing does not determine the guilt or innocence of the juvenile, latitude is permitted in admitting evidence which would be otherwise inadmissible in a criminal prosecution." Gulledge v. State,419 So.2d 219, 220 (Ala. 1982) (hearsay evidence admissible).
Although the resolution of the apparent conflict between Rules 11 and 21 causes us some difficulty, we conclude that, even if Rule 11 requires that a juvenile be warned of his right to communicate with his parent before any statement or confession which is the product of custodial interrogation will be admissible, the admission of Whisenant's confessions at the transfer hearing was not error. See United States v. WhiteBear, 668 F.2d 409 (8th Cir. 1982) (juvenile's statement voluntary and admissible despite fact that arresting officers failed to adequately advise juvenile's mother of his constitutional rights as required by federal statute). See alsoPeople v. Steptore, 51 Ill.2d 208, 281 N.E.2d 642, 645 (1972);People v. Zepeda, 47 Ill.2d 23, 265 N.E.2d 647 (1970).
 VI
Whisenant's last argument in support of his contention that his statements should have been suppressed is because he was not taken "with all possible speed" to the juvenile authorities after his arrest.
Alabama Code Section 12-15-58 provides:
 "(a) A person taking a child into custody shall, with all possible speed, and in accordance with the provisions of this chapter and the rules of court pursuant thereto:"
. . . .
 "(3) Bring the child, if not released, to the intake office of probation services or deliver the child to a place of detention or shelter care designated by the court and, in the most expeditious manner possible, give notice of the action taken, together with a statement of the reasons for taking the child into custody, in writing to the intake office, to the court and to the parent, guardian or other custodian of the child and, in the case of dependency, to the department of pensions and security."
Three hours and twenty-five minutes elapsed between the time of Whisenant's arrest at 10:15 P.M. on March 17th, until he was placed in the juvenile facility at 1:40 A.M. on March 18th. Our review of this issue is necessarily limited by the fact that this ground of objection was not raised in the juvenile court and consequently was not addressed by the juvenile court judge.
A defendant cannot challenge the admission of his confessions on appeal on grounds not asserted at trial. In Bolding v.State, 428 So.2d 187, 191 (Ala.Cr.App. 1983), this Court stated:
 "Only those grounds of objection presented to the trial court can serve as a basis for reversal of its action. Bland v. State, 395 So.2d 164
(Ala.Cr.App. 1981). The trial judge will not be placed in error on grounds not assigned in the objection. Knight v. State, 381 So.2d 680
(Ala.Cr.App. *Page 1005 
1980). Even though evidence may have been inadmissible on different grounds, the defendant is bound by the specified grounds of objection. Turley v. State, 356 So.2d 1238 (Ala.Cr.App. 1978)."
"Specific grounds of objection waive all grounds not specified." Waters v. State, 360 So.2d 358, 363 (Ala.Cr.App.), cert. denied, Ex parte Waters, 360 So.2d 367 (Ala. 1978).
Until January 16, 1977, the effective date of Section 12-15-58, there was no statutory requirement that a police officer taking a minor into custody for an offense take him immediately before a juvenile court or officer. See Parker v.State, 351 So.2d 927, 933-34 (Ala.Cr.App.), cert. quashed,351 So.2d 938 (Ala. 1977). There is no case law construing this section. The question becomes whether the intent of this provision is that the juvenile be provided with the assistance and protection afforded by the juvenile authority before he is subjected to police interrogation, State v. Wade,531 S.W.2d 726 (Mo. 1976), or whether police officers are authorized to investigate and obtain information from a juvenile relative to a crime before delivering him to the proper juvenile authority.State v. Hinkle, 206 Kan. 472, 479 P.2d 841 (1971). It should be clear that, where a juvenile is taken into custody, the special statutory proceedings and safeguards must be complied with at the time when the statute dictates and not at the discretion of the arresting officer. Dowst v. State,336 So.2d 375 (Fla.App. 1976). "However, statutory provisions regulating the taking of a juvenile into custody do not forbid custodial questioning of a juvenile in all events. . . ." 43 C.J.S.Infants Section 42 (1978).
Under Section 12-15-56, a child may be taken into custody by a law enforcement officer "(f)or a delinquent act pursuant to the laws of arrest." "There appears to be no doubt that an officer may arrest a juvenile observed in the commission of a crime, or, with respect to felonies, upon reasonable grounds that the juvenile has committed a felony. However, care must be exercised as to what is done with the juvenile after the arrest." 47 Am.Jur.2d Juvenile Courts Section 35 (1969).
Once an officer has taken a child into custody he must, "with all possible speed", bring the child, if not released, to the proper probation officer, or detention or shelter care facility as designated by the juvenile court. See Section 12-15-58 and A.R.J.P. 8 and 9. Section 12-15-61 provides that in certain cases a delinquent child or child alleged to be delinquent may be detained in a jail or other facility for the detention of adults.
We do not think that the purpose of the "with all possible speed" requirement of Section 12-15-58 is to immunize juveniles from police investigation and interrogation or erect a shield between minors and law enforcement officers. People v. Zepeda,47 Ill.2d 23, 265 N.E.2d 647, 649-50 (1970). Moreover, the unlawful detention of a juvenile in violation of Section 12-15-58 does not necessarily and automatically require the suppression of the juvenile's statement. Zepeda, supra.
Section 12-15-58 refers to "all possible speed". The word "possible" is "also sometimes equivalent to `practicable' or `reasonable', as in some cases where action is required to be taken `as soon as possible.'" Black's Law Dictionary 1049 (5th ed. 1979). The phrase "as speedily as possible" means within a reasonable time or without unreasonable delay, having regard to all the circumstances of the case and the things to be done.Tatum v. Levi, 117 Cal.App. 83, 3 P.2d 963, 967 (1931); 4 Words and Phrases As Speedily As Possible 593-94 (perm. ed. 1969).
Even if the police failed to act with "all possible speed" in delivering Whisenant to the juvenile authorities, his confession was properly admitted in the transfer hearing. As inWinstead, 371 So.2d at 421, "(t)he holding here is limited to the admissibility of such statements in transfer proceedings, which is all that is before us." A transfer hearing is concerned with probable cause and not guilt beyond a reasonable doubt. Section 12-15-34. Bragg v. State, *Page 1006 416 So.2d 715 (Ala. 1982). A transfer or certification hearing is not for the determination of the guilt or innocence of the juvenile but is in the nature of a preliminary hearing to determine whether there is probable cause for believing that the allegations of the petition are true. Snow v. State,423 So.2d 220, 222 (Ala. 1982); Duncan v. State, 394 So.2d 930, 932
(Ala. 1981). "The purpose of a transfer hearing . . . (is) to establish whether there is probable cause for a child to be transferred from juvenile court for criminal prosecution as an adult." Gallagher v. State, 425 So.2d 1079, 1080 (Ala. 1983);Brown v. State, 353 So.2d 1384, 1387 (Ala. 1977).
This Court is impressed by the skill and competence of appointed counsel in representing Whisenant, as well as by the conscientiousness of the juvenile court judge. The judgment of the juvenile court transferring Whisenant for criminal prosecution as an adult is affirmed.
AFFIRMED.
All Judges concur.
[1] Section 12-15-34 (d) states:
"Evidence of the following and other relevant factors shall be considered in determining whether the motion shall be granted:
(1) The nature of the present alleged offense;
(2) The extent and nature of the child's prior delinquency record;
(3) The nature of past treatment efforts and the nature of the child's response to such efforts;
(4) Demeanor;
(5) The extent and nature of the child's physical and mental maturity; and
(6) The interests of the community and of the child requiring that the child be placed under legal restraint or discipline."