We granted certiorari review in this case in order to determine whether probable cause for arrest existed.
Dana Lamark Dixon pleaded guilty to first degree burglary and first degree rape while reserving his right to appeal from the trial court's denial of a motion to suppress. The Court of Criminal Appeals reversed the conviction, holding that there was no probable cause for arrest, and, therefore, that the motion to suppress should have been granted. 588 So.2d 891. We reverse and remand.
The facts are as follows: Officer Echols of the Montgomery Police Department was on routine patrol on Wednesday, March 22, 1989. At about 9:20 a.m., Echols saw Dixon, age 15, standing on a sidewalk at the rear of a residence. Echols knew that this particular neighborhood had recently experienced a series of burglaries. Due to Dixon's demeanor and the fact that there had been recent burglaries in the neighborhood, Echols thought that Dixon was a possible *Page 904 
lookout for a burglary taking place or about to take place. Echols stopped for a few minutes and observed Dixon, who was standing on the sidewalk looking around. Echols then approached Dixon. When Dixon saw Echols, Dixon tried to walk away. Echols stopped Dixon and questioned him.
Echols asked Dixon what he was doing. Dixon said that he was "just standing there." Echols asked Dixon his age, and Dixon said he was 15 years old. Echols then asked Dixon why he was not in school. Dixon said that he had been expelled. Echols then asked Dixon if he had ever committed any burglaries. Dixon said that he had committed one burglary before, but that "he had already done what he was supposed to have done for it."[1] Echols then patted down Dixon and found a three-inch box cutter.
Echols noticed that Dixon was wearing a green baseball cap with white letters on it, a green-colored jacket with the style and logo of the Miami Dolphins football team, tan pants, and white tennis shoes and had a medium complexion. Echols then realized that Dixon matched the description of a rape suspect. The rape had occurred three blocks away and three days earlier. The victim had described the suspect as a black male with a medium complexion, approximately 5' 8" tall, weighing approximately 130 pounds, and wearing a green baseball cap with white letters, tan or khaki pants, and a light colored shirt.[2] The victim also described the rapist as 17 or 18 years of age. Echols then contacted an officer in the police department's sex crimes division. This officer requested that Echols bring Dixon to police headquarters, because Dixon generally fit the description of the rapist. Echols did not arrest Dixon, but asked Dixon to accompany him to police headquarters and Dixon agreed to do so.
Dixon was taken to police headquarters around 9:30 a.m. At headquarters, Corporal Locklar asked Dixon for his mother's name and place of employment. Locklar then called Dixon's mother and explained to her that Dixon was at police headquarters and that she could come to the station if she desired to do so. This conversation took place between 9:30 and 10:00 a.m.
Around 10:15 a.m. Echols took Dixon to the juvenile division of police headquarters and left Dixon with two juvenile officers, Corporal Fuentez and Investigator Livingston.
Livingston read Dixon his rights from the juvenile rights form, pursuant to Rule 11(A), A.R.Juv.P. Dixon said that he understood his rights, signed the form, and stated that he wanted to speak to his mother. Livingston telephoned Dixon's mother and told her that she needed to come to police headquarters as soon as possible.
Fuentez told Dixon that he was at police headquarters because he matched the description of a rapist and was basically wearing the same clothing as the rapist. Fuentez told Dixon that there was going to be a lineup at the Montgomery Youth Facility located on Air Base Boulevard.
Fuentez drove Dixon to the Youth Facility around 11:30 a.m. Fuentez placed Dixon in the visitation room of the Youth Facility. The personnel at the Youth Facility told Fuentez that the lineup could not be held until 12:30. Fuentez then left Dixon in the visitation room and went to lunch.
When Fuentez returned from lunch, he saw Dixon talking to his parents in the visitation room. Approximately 10 or 15 minutes later, Fuentez went into the visitation room and introduced himself to Dixon's parents. Fuentez took Dixon's parents into the in-take office, where he informed them that Dixon was to participate in a lineup.
At the lineup, the victim tentatively identified Dixon as the rapist. Fuentez went back to the visitation room and advised Dixon of his rights as a juvenile. Dixon then waived his rights and confessed to breaking into the victim's house and raping her. Detective Scott, the homicide detective originally assigned to the case, was *Page 905 
also present when Dixon waived his rights and confessed.
After obtaining Dixon's confession, Fuentez informed Dixon's parents that the victim had tentatively identified Dixon as the rapist. Fuentez also told them that Dixon had admitted to committing the crimes and that he was being taken to police headquarters to make a tape-recorded statement.
Dixon was again informed of his rights; he again waived his rights and admitted to breaking into the victim's house and raping her.
Dixon filed a motion to suppress the evidence of the lineup and the confessions. After the hearing on the motion to suppress, the trial court entered the following order:
 "This matter comes before the Court on Defendant's Motion to Suppress a lineup and two statements given to a police officer in which defendant admitted his guilt of rape. The central issue to be decided by the Court is:
 "Whether or not it's mandatory that a juvenile's parents be present at all times while law enforcement [personnel] talk to and/or interrogate the juvenile about a crime after the juvenile has initially advised law enforcement that he wants to talk to his parents.
 "The defendant, 15 years old, was arrested and held as a suspect in a rape case. Three (3) days after the alleged rape the defendant was observed by Sgt. Echols, Montgomery Police Department, standing on a street approximately three (3) blocks from the scene of the rape. Sgt. Echols states that he approached the defendant and questioned him about standing on the corner because he suspected him of being a lookout in a burglary. The surrounding community is considered a high crime area and several burglaries have recently been committed in the area. Moreover, the defendant was wearing a baseball cap and pants that fit the description of the cap and pants the assailant was wearing at the time of the rape. The defendant further fit the physical description of the rapist, including sex, race, age and general size.
 "After confirming the rape lookout, Sgt. Echols took the defendant to police headquarters and met with Detective Livingston. Detective Livingston read him his juvenile rights and the defendant told him he wanted to talk to his parents. Detective Livingston ceased the interview and called defendant's mother at work and advised her of the incident, but she said she was too busy to come down at that time. She was called a second time by Detective Locklar and stated that she would leave work and meet the officers and her son.
 "The defendant's father and mother arrived at the Youth Facility and the three of them were placed in the visitation room where they were allowed to talk. The Defendant was placed in a lineup and tentatively identified by the victim as the assailant. The Defendant was returned to the visitation room where he was again advised of his juvenile rights. He waived them and orally confessed. The defendant was returned to the Montgomery Police Department, and again advised of his juvenile rights, which he waived by signing a waiver of rights form. He was then questioned by Investigator Fuentez and confessed to the crime in a taped statement.
 "The appellate courts of Alabama have held that the totality of circumstances approach is used in determining whether statements obtained during custodial interrogation of a [juvenile] are admissible. Whisenant v. State, 466 So.2d 995
(Ala.Cr.App. 1984). This Court has viewed the facts most favorably to the defendant and finds that based on the totality of the circumstances here, nothing impermissible occurred, and, further, it is not a constitutional requirement that a juvenile's parents be actually present during the time of interrogation. Whisenant, supra.
 "Based on the above, defendant's Motion for Suppression is hereby DENIED."
The Court of Criminal Appeals held that, at some point, Dixon's voluntary trip to *Page 906 
police headquarters escalated into an arrest. Although the court did not find it necessary to determine the exact moment that Dixon was arrested, it held that he was arrested at some time prior to the lineup. The court then held that no probable cause existed for the arrest. The court also found that no intervening circumstances occurred between the arrest and the confession that would sufficiently attenuate the taint of the arrest. The court stated that even if the arrest had been sufficiently attenuated from the confession, the confession was not voluntary.
Even if we should agree with the Court of Criminal Appeals' determination that Dixon was arrested at some point prior to the lineup, we do not agree that there was no probable cause to arrest. Instead, we find that there was probable cause for arrest.
Probable cause to support a warrantless arrest must exist at the time of the arrest. Davis v. State, 507 So.2d 1023
(Ala.Cr.App. 1986). Probable cause exists if facts and circumstances known to the arresting officer are sufficient to warrant a person of reasonable caution to believe that the suspect has committed a crime. United States v. Rollins,699 F.2d 530 (11th Cir.) cert. denied, 464 U.S. 933, 104 S.Ct. 335,78 L.Ed.2d 305 (1983). "In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act. . . ." Brinegar v. UnitedStates, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879,1891 (1949). " 'The substance of all the definitions of probable cause is a reasonable ground for belief of guilt.' "Id. "Probable cause to arrest is measured against an objective standard and, if the standard is met, it is unnecessary that the officer subjectively believe that he has a basis for the arrest." Cox v. State, 489 So.2d 612 (Ala.Cr.App. 1985). The officer need not have enough evidence or information to support a conviction in order to have probable cause for arrest. Only a probability, not a prima facie showing, of criminal activity is the standard of probable cause. Stone v. State, 501 So.2d 562
(Ala.Cr.App. 1986). "'[P]robable cause may emanate from the collective knowledge of the police. . . .' " Ex parte Boyd,542 So.2d 1276, 1284 (Ala. 1989) (citations omitted).
In the instant case, Echols saw Dixon acting in a way that suggested he was a lookout for a burglary. Dixon was standing at the rear of a residence, looking around. We note that Dixon was a teenager and that this occurred during school hours. This neighborhood had recently experienced a number of burglaries. When Dixon saw Echols approach him, he started to move away. When Echols asked Dixon what he was doing, Dixon said he was just standing there. Dixon admitted to Echols that he had a criminal history of burglary. Dixon matched the general description of the suspected rapist and burglar in that he was of the same race and basically the same size, age, and complexion. Also, Dixon was wearing a baseball hat and pants like those the victim had described as being worn by the attacker. Clearly, these facts and circumstances created reasonable cause to believe that Dixon was the suspected rapist and burglar.
The fact that an area is known for crime can serve to create a reasonable suspicion. See Lewis v. State, 518 So.2d 214, 217
(Ala.Cr.App. 1987). Dixon's deliberately furtive actions and flight at the approach of a police officer "are strong indicia of mens rea, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of the crime, they are proper factors to be considered in the decision to make an arrest." Molina v. State, 533 So.2d 701, 707
(Ala.Cr.App. 1988), quoting Sibron v. New York, 392 U.S. 40,66, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968). Also, evasive answers to police questions have been held to be a factor in establishing probable cause. See Childress v. State,455 So.2d 175 (Ala.Cr.App. 1984). Dixon's reply to Echols's question "What are you doing?" was that he was "just standing there." Certainly, this evasive answer, when coupled with the fact *Page 907 
that Dixon was located at the rear of a residence and was looking around, is a factor tending to establish probable cause.
Dixon also matched the general description of the rapist. InUnited States v. Johnson, 741 F.2d 1338 (11th Cir. 1984), the court held that because the defendant fit the "rough description" of the robber, given other factors, probable cause did exist.
There was probable cause to arrest Dixon, and the trial court correctly denied the motion to suppress.
We also disagree with the Court of Criminal Appeals' determination that the confessions were not voluntary.
In determining whether a confession is voluntary, the trial court's finding of voluntariness need only be supported by a preponderance of the evidence. Seawright v. State,479 So.2d 1362, 1367 (Ala.Crim.App. 1985). The trial court's decision will not be disturbed on appeal unless it is manifestly contrary to the great weight of the evidence. "'The test for the voluntary nature of an extrajudicial confession or inculpatory statement is whether in light of all the surrounding circumstances, the statement was free from inducement, threat or promise, either expressed or implied, which would have produced in the mind of the accused any fear of harm or hope of favor.' " Seawright, 479 So.2d at 1367, citing Rogers v. State, 365 So.2d 322 (Ala.Crim.App.), cert. denied, 365 So.2d 334 (Ala. 1978).
We note that the trial judge, as the finder of fact, determined the credibility of the witnesses. The trial court's determination regarding credibility of witnesses is entitled to great weight on appeal. Calhoun v. State, 460 So.2d 268
(Ala.Crim.App. 1982).
At the hearing on the motion to suppress, the defendant testified that Corporal Fuentez told him that if he did not make a confession he would be treated as an adult. Corporal Fuentez testified that Dixon's confession was voluntary and of his own free will. Detective Scott also testified to the voluntariness of Dixon's confession.
Although the Court of Criminal Appeals seemed to focus on only a portion of Detective Scott's testimony, we hold that, considering all of the record, the judge's finding of voluntariness was not against the great weight of the evidence. Detective Scott's testimony, in pertinent part, was as follows:
 "Q. [Dixon's attorney:] Did you hear Corporal Fuentez tell Dana that if he made a statement, he could keep him in the juvenile system, he would be treated as a juvenile?
 "A. [Detective Scott:] I don't remember the exact statement. Yes, I remember something to that extent.
 "Q. Did you in fact make a statement to Dana that if he did not make a statement that he would have to be treated as an adult?
"A. No, sir.
 "Q. Did you make a statement that if Dana did not make a statement that he would go to the penitentiary?
"A. No, sir."
(R.T. 115-16.)
On cross-examination, the prosecutor asked Detective Scott the following questions:
 "Q. [Prosecutor:] You said something about his being in the juvenile system to Mr. Pierson [Dixon's attorney]. Please explain what was said.
 "A. [Detective Scott:] I am sorry. I am losing you right here.
 "Q. I was not clear either. When Mr. Pierson asked you a question about what you heard Corporal Fuentez say to the defendant about his giving a statement and being in the juvenile system, does that ring a bell?
 "A. Yes. Corporal Fuentez introduced me as the officer that handled the initial investigation. With him being a juvenile, I would not be handling it. I was there strictly as the initial investigator. *Page 908 
 "Q. Were any promises or threats made to the defendant, Dana Dixon, to get him to talk?
"A. No."
(R.T. 119-20.)
Clearly, the trial judge's determination of voluntariness was not against the great weight of the evidence. " 'Where the evidence of voluntariness is conflicting, and even where there is credible testimony to the contrary, the trial judge's finding of voluntariness must be upheld unless palpably contrary to the weight of the evidence." ' Carr v. State,545 So.2d 820, 824 (Ala.Crim.App. 1989) (other citations omitted).
The trial court did not err in denying the motion to suppress the confessions, because the evidence supports the trial judge's conclusion that they were made voluntarily.
REVERSED and REMANDED.
HORNSBY, C.J., and MADDOX, ALMON, SHORES, ADAMS, HOUSTON and INGRAM, JJ., concur.
[1] Apparently, Dixon had committed a burglary, had been caught, and had been punished for it.
[2] Dixon weighed 169 pounds and was 5' 6" tall.