673 So.2d 838 (1995)
T.R.D.
v.
STATE.
CR-93-1801.
Court of Criminal Appeals of Alabama.
October 20, 1995.
Rehearing Denied December 1, 1995.
*840 Joe W. Morgan, Jr., Birmingham, for Appellant.
Jeff Sessions, Atty. Gen., and Thomas Leverette, Asst. Atty. Gen., for Appellee.
COBB, Judge.
This case was originally assigned to another judge on the Alabama Court of Criminal Appeals. It was reassigned to Judge Cobb on January 17, 1995.
The appellant in this case, T.R.D., a juvenile, was charged in a delinquency petition with the murder of Vicki Lynn Deblieux, made capital because it was committed during the course of a kidnapping in the first degree. § 13A-5-40(a)(1), Ala.Code, 1975. The State filed a petition to transfer the appellant's case to the Circuit Court of Jefferson County so that the appellant could be tried as an adult. After a transfer hearing, the juvenile court granted the State's petition. The current appeal is from the court's transfer order.

I
The appellant's first claim is that the evidence was insufficient from which to find probable cause that the appellant committed a capital murder. The appellant's contention is that although a homicide undeniably occurred, there is no evidence that it was committed during the course of a kidnapping.
The facts adduced from the record are the following. The car in which the appellant was riding picked up Vicki Lynn Deblieux, who was hitchhiking from Chattanooga, Tennessee, to her parents' home in Monroe, Louisiana. The appellant and the other occupants of the car (Dale Grayson, K.L., and L.C.M.) agreed to give her a ride to her destination if she would give them a place to stay when they arrived. (R. 704.) She agreed and entered the car. Once Ms. Deblieux was in the car, they drove to a secluded area, where they murdered her. (R. 704.) During the ride to this area, known as "the pipeline", where K.L.'s truck was parked, the victim protested that she wanted to get out of the car, but she was told to "chill out." (R. 705.) She became nervous and announced to the group that if any one of them "tried anything," she would kill them all. (R. 424.)
Once at the pipeline, Dale Grayson announced his intent to kill Ms. Deblieux. (R. *841 705-06.) When she attempted to escape, the men killed her. (R. 706.) The men kicked and beat Ms. Deblieux. Both K.L. and Grayson stood on her throat, suffocating her. (R. 706.) Just before she died, she said, "O.K., I'll party." (R. 706.) The four men transported Ms. Deblieux's body to Bald Rock Mountain in St. Clair County. (R. 706.) T.R.D. placed a beer bottle in her vagina and kicked it, while the rest laughed. (R. 706.) The men poked the body with sticks. (R. 706.) Then the men threw the body over the cliff, where it fell and came to rest about 40 feet below. (R. 706.) During the fall, the victim's head was crushed, exposing a portion of her brain. (C. 85.) They left the body there and went to wash the dirt and the victim's blood from K.L.'s truck, which they had used to move the body, and from themselves. (R. 707.) After taking L.C.M. home, the three other men returned to where they had left the body. (R. 174.)
Once they returned to the scene, the record reveals that the three men cut the fingers off Ms. Deblieux's body, in order to eradicate her fingerprints. (R. 174-75.) The men kept her fingers as souvenirs. (R. 283.) Ms. Deblieux's body was stripped of all clothing. (R. 707.) The men stabbed her approximately 180 times. (C. 95.) They cut open her chest and removed what they thought was her heart, from which K.L. and Grayson took a bite (R. 177); the amputated organ was actually one of her lungs. (C. 95.) K.L. spit the piece of lung he had bitten off into the victim's face. (R. 177.)
The appellant argues that no proof exists that the victim was kidnapped before she was murdered. He argues that the victim was free to leave at any time, once they arrived at their destination, and that she refused to leave the car when she had the opportunity. However, this court disagrees.
Kidnapping in the first degree is committed if "a person ... abducts another person with intent to ... [i]nflict physical injury upon him, or to violate or abuse him sexually." § 13A-6-43(a)(4) Ala.Code 1975. "Abduct" is defined as "[t]o restrain a person with intent to prevent his liberation by either: (a) Secreting or holding him in a place where he is not likely to be found, or (b) Using or threatening to use deadly physical force." § 13A-6-40(2) Ala.Code 1975. Further, "restrain" is defined as
"intentionally or knowingly restrict[ing] a person's movements unlawfully and without consent, so as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved. Restraint is `without consent' if it is accomplished by:
"a. Physical force, intimidation or deception
". . . ."
§ 13A-6-40(1) Ala.Code 1975.
The crux of the appellant's argument is that the prosecution has not proven the appellant's intent to kidnap this victim. The appellant alleges that the victim entered the car willingly and voluntarily. However, nowhere in the statute is there a requirement that a kidnapping victim be taken to a place of confinement by force. As this court has previously held, the victim may voluntarily enter the place where she is later restrained against her will, and the crime still constitutes kidnapping.
"A reading of our kidnapping statutes and the definitions of `abduct' and `restrain' makes it obvious that these provisions have broadened and enlarged common law kidnapping which required unlawful confinement plus asportation. See R. Perkins and R. Boyce, Criminal Law, p. 230 (3rd ed. 1982). `One may be secretly confined, although he had originally selected the secluded spot for some purpose of his own, if he is compelled to remain there against his will.' Perkins at 232. See also Smith v. State, 63 Wis. [453] 433, 23 N.W. 879 (1885), which was cited with approval in Doss [v. State ], 220 Ala. [30,] 32, 123 So. 231 [ (1929) ]."
Musgrove v. State, 519 So.2d 565, 581 (Ala. Crim.App.1986). (Emphasis added.) The appellant's argument clearly misses the mark. Simply because the victim agreed initially to enter the car does not negate the fact that she was later forcibly confined. The concept of restraint is "concerned with *842 intentional, unlawful and nonconsensual removal or confinement." § 13A-6-40, Commentary. Accord, Mims v. State, 591 So.2d 120 (Ala.Crim.App.1991) (victim voluntarily accompanied an acquaintance to another's apartment where she was then forcibly restrained and brutally raped).
The facts establish that the victim asked to be let out of the car when she realized that the men were not headed toward the destination she thought they had agreed upon. At this point, whatever was the intent of these men in picking up this woman, after she clearly expressed that she wanted to get out of the car, she was being held against her will, without an opportunity to exit the car voluntarily. Based upon his own statement, the appellant participated in this murder. The evidence strongly suggests that the four men intended to harm this woman. If they had not formed that intent when they retrieved her from the roadside, then they at least formed that intent soon thereafter, when they changed course to go to the pipeline.
Furthermore, a juvenile judge must make only a probable cause finding regarding the offense in order to transfer a juvenile for criminal prosecution. As the Alabama Supreme Court and this court have consistently held, "Probable cause, in the context of transfer hearings, is defined as that which would warrant a [person] of reasonable prudence and caution in believing that the offense has been committed and that the person in question is the offender." Bragg v. State, 416 So.2d 715 (Ala.1982). See also J.S.A. v. State, 615 So.2d 1288 (Ala.Crim. App.1993), Whisenant v. State, 466 So.2d 995 (Ala.Crim.App.1984), rev'd on other grounds, 466 So.2d 1006 (Ala.1985); Ash v. State, 424 So.2d 1381 (Ala.Crim.App.1982); Duncan v. State, 394 So.2d 930 (Ala.1981).
A reasonable person could logically infer from the facts provided above, which, but for the details of the post-mortem mutilation, are nearly identical to the statement given by the appellant that the men intended to, and did, kidnap and murder this woman. The burden of establishing probable cause is not as great as one establishing guilt or innocence, and the State easily met and exceeded its burden in this matter.

II
The appellant next contends that the juvenile judge erred in considering only one of the six statutory factors that must be considered before transferring the appellant for criminal prosecution.
The governing statute states, in pertinent part, as follows:
"§ 12-15-34. Transfer of cases from juvenile to criminal court.
". . . .
"(b) The court shall conduct a hearing on all [motions requesting a transfer] for the purpose of determining whether it is in the best interest of the child or the public to grant the motion. If the court so finds..., it shall order the case transferred for criminal prosecution.
". . . .
"(d) Evidence of the following and other relevant factors shall be considered in determining whether the motion shall be granted:
"(1) The nature of the present alleged offense;
"(2) The extent and nature of the child's prior delinquency record;
"(3) The nature of past treatment efforts and the nature of the child's response to such efforts;
"(4) Demeanor;
"(5) The extent and nature of the child's physical and mental maturity; and
"(6) The interests of the community and of the child requiring that the child be placed under legal restraint or discipline."
Under the requirements of § 12-15-34(d), the court must consider the six factors listed above in making the determination that, by clear and convincing evidence, it is in the best interest of the juvenile or of the public that the case be transferred out of the juvenile system. O.M. v. State, 595 So.2d 514 (Ala.Crim.App.1991), writ quashed, 595 So.2d 528 (Ala.1992); W.T.K. v. State, 598 So.2d 33 (Ala.Crim.App.1992), cert. denied, *843 Knotts v. Alabama, 506 U.S. 859, 113 S.Ct. 173, 121 L.Ed.2d 120 (1992); J.S.A. v. State, supra. See also Ex parte J.R., 582 So.2d 444 (Ala.), cert. denied, 502 U.S. 837, 112 S.Ct. 122, 116 L.E.2d 90 (1991) (Justice Kennedy, dissenting). The juvenile court need not make any specific findings as to the six factors specified under § 12-15-34(d), but must only note in its order that all the factors were considered. Taylor v. State, 507 So.2d 1034 (Ala.Crim.App.1987); J.S.A. v. State, supra. The court's transfer order indicates that the court considered all the factors enumerated in § 12-15-34(d), Code of Alabama 1975, in reaching its determination that it would be in the best interest of the appellant or the public to transfer the appellant to circuit court. (C. 101-02.) Further, "[t]his Court will not interfere with the lower court's order [transferring a juvenile to circuit court] unless it is clearly erroneous." Williams v. State, 361 So.2d 1157 (Ala.1978). Accord, Duncan v. State, 394 So.2d 930, 932 (Ala.1981); Slaton v. State, 555 So.2d 814, 815 (Ala.Crim.App.1989); J.M.V. v. State, 651 So.2d 1087 (Ala.Crim.App.1994).
The appellant contends that the juvenile court considered the factor that this case was quite gruesome more heavily than any other of the six factors enumerated in § 12-15-34(d). However, this court has consistently held that although all six factors are to be considered, the weight to be accorded each is left to the sole discretion of the trial court, balancing the interests of society against those of the juvenile. The decision is a judicial one, and so long as the court considers each factor, it has properly fulfilled its responsibility. Reeves v. State, 419 So.2d 217, 218 (Ala.1982); Williams v. State, 494 So.2d 887, 890 (Ala.Crim.App.1986); T.J. v. State, 611 So.2d 1116, 1118 (Ala.Crim.App.), cert. denied, 611 So.2d 1118 (Ala.1992); A.M. v. State, 621 So.2d 369 (Ala.Crim.App.1992); J.S.A. v. State, supra; J.M.V. v. State, supra. No abuse of discretion is evident in this judgment.

III
The appellant further contends that a photograph of the victim was entered into evidence without proper predicate having been laid.
According to accepted evidentiary authorities, "`[b]efore photographs may be properly admitted, two general conditions must be satisfied. First, the picture must be properly verified and secondly, the photographs must tend to prove or disprove some relevant fact or must corroborate or disprove some other evidence offered or to be offered.' " Lewis v. State, 465 So.2d 1185, 1188 (Ala.Crim.App.1984); (quoting Harrison v. Woodley Square Apartments, 421 So.2d 101, 103-04 (Ala.1982)). See, C. Gamble, McElroy's Alabama Evidence, § 123.03(1) (4th ed. 1991). This photograph, taken in 1992 in an airport, identified the victim. The witness on the stand when the photograph was introduced was the victim's mother, who testified that the woman pictured was her daughter. (R. 81-82.) The photograph is relevant in that it represents the victim prior to her murder and mutilation.
A photograph may be authenticated by a witness who knows the subject matter and who can testify that it is a substantially correct depiction of that subject. Sims v. State, 485 So.2d 793 (Ala.Crim.App.1986); see, McElroy's Alabama Evidence, § 123.03(3) (4th ed. 1991). The witness testified that she was present when the photograph was taken. She had provided it to the prosecution for its use. (R. 82-83.)
Whether a photograph is admissible is left up to the sound discretion of the trial court and that decision will not be reversed without a showing of abuse. Lewis, supra. McElroy's Alabama Evidence, § 123.03(2) (4th ed. 1991). The judge accepted the photograph of the victim into evidence over the defense's objection. In Pierce v. State, 292 Ala. 473, 296 So.2d 218, 227 (1974) cert. denied Ballew v. Alabama, 419 U.S. 1130, 95 S.Ct. 816, 42 L.Ed.2d 830 (1975), the Alabama Supreme Court held, "[T]his court will not review the trial court's decision on this issue [admission of photographs] except for an abuse of discretion." See, Williams v. State, 453 So.2d 367 (Ala.Crim.App.1984); Carter v. State, 439 So.2d 1361 (Ala.Crim. App.1983); Chambers v. Culver, 289 Ala. 724, *844 272 So.2d 236 (1973); Freeman v. Hall, 286 Ala. 161, 238 So.2d 330 (1970); Stokes v. Bryan, 42 Ala.App. 120, 154 So.2d 754 (1963). No abuse of discretion is evident from the lower court's admission of this photograph.

IV
Counsel for the appellant finally contends that the juvenile court erred in admitting the statement of L.C.M. against the appellant. However, this court concludes that the appellant did not preserve the issue for review, because the appellant's counsel failed to join the objection made by L.C.M.'s counsel. (R. 703.) Nothing in the record indicates that the judge made a practice of treating an objection by one of the three defendants' counsel as being made by all three defendants. On the contrary, the judge specifically instructed the appellant's counsel that, for the record, he would need to join in any objection made by counsel for any other defendant. (R. 249.) Further, the judge plainly stated that although the hearings were consolidated, each defendant's case was being considered separately. (R. 131.)
Without some indication in the record that the judge accepted the objection made by one attorney as an objection for all three defendants, this court will not find that the judge did so. This court holds that each appellant was responsible for making his own objections. Because the appellant's counsel failed to object separately to the admission of L.C.M.'s statement, the issue of that statement's admission is not preserved for review.
For the foregoing reasons, this court finds that the appellant was properly transferred to stand trial as an adult for his participation in the kidnapping and murder of Vicki Lynn Deblieux.
AFFIRMED.
All the Judges concur.
TAYLOR, P.J., concurs specially with opinion.
TAYLOR, Presiding Judge, concurring specially.
I concur in the conclusion reached by the majority that there was evidence that a kidnapping occurred. However, I note this court's decision in Jenkins v. State, 627 So.2d 1034 (Ala.Cr.App.1992), aff'd, 627 So.2d 1054 (Ala.1993), which lends further support to the majority's conclusion. In Jenkins this court stated:
"The appellant also argues that there was insufficient evidence to find him guilty of kidnapping. `A person commits the crime of kidnapping in the first degree if he abducts another person with intent to... [i]nflict physical injury upon him, or to violate or abuse him sexually.' Section 13A-6-43(4), Code of Alabama 1975. The appellant maintains that there was no evidence that the victim was abducted. He contends that the same evidence could be viewed as showing that she voluntarily left the restaurant with the appellant. The great weight of the evidence, however, points to the opposite hypothesis.
"`Abduct' is defined in § 13A-6-40(2) as `to restrain a person with intent to prevent his liberation by either: a. Secreting or holding him in a place where he is not likely to be found, or b. Using or threatening to use deadly physical force.' To reiterate, the state's evidence tended to show that the victim was the only cook on duty at the Omelet Shoppe when the appellant came into the restaurant on the night of the victim's disappearance. She was wearing her apron and her work uniform. She left without taking her purse or her cigarettes, even though she was a heavy smoker. The victim was paid that evening and did not take her paycheck. She told no one where she was going. Her clothing and the articles she left behind tend to show that she did not leave voluntarily. Her body was found in a remote area on the side of I-59. `A reasonable juror may well have believed that she would not have voluntarily accompanied [the appellant] to such an area.' Neal v. State, 451 So.2d 743, 758 (Miss.1984), cert. denied, 469 U.S. 1098, 105 S.Ct. 607, 83 L.Ed.2d 716 (1984), post-conviction relief granted in part on other grounds, 525 So.2d 1279 (Miss.1987). Furthermore, the position of the clothing around the victim's head and the fact that she was manually strangled tend to show *845 that she was restrained prior to her death. `The physical condition of the body ... the conduct and admission of the appellant were sufficient to establish ... the underlying felony of kidnapping.' Mines v. State, 390 So.2d 332, 335 (Fla.1980), cert. denied, 451 U.S. 916, 101 S.Ct. 1994, 68 L.Ed.2d 308 (1981). See also State v. James, 459 So.2d 1299 (La.App.1984), writ denied, 463 So.2d 600 (La.1985). Moreover, even if the victim initially left the restaurant with the appellant voluntarily, the offense of kidnapping is not mitigated. Adams v. State, 412 So.2d 850, 852 (Fla. 1982), cert. denied, 459 U.S. 882, 103 S.Ct. 182, 74 L.Ed.2d 148 (1982)."
627 So.2d at 1041.