SEE, Justice.
 

 The City of Birmingham (“the City”) appeals from the Jefferson Circuit Court’s denial of the City’s postjudgment motion for a judgment as a matter of law in the underlying civil-rights action against it. The trial court refused to set aside the judgment it entered on a jury verdict awarding Eric L. Major $500,000 in compensatory damages on Major’s civil-rights action against the City brought pursuant to 42 U.S.C. § 1983. We reverse the trial court’s judgment and render a judgment in favor of the City.
 

 Facts and Procedural History
 

 On the night of April 29, 2004, Officer A1 Anger of the Birmingham Police Department was on patrol in the City’s South Precinct. Sometime around 11:30 p.m., Officer Anger saw a woman get out of an automobile on the other side of the street; she ran toward him. The woman approached Officer Anger and identified herself as Shamanda Joseph. Joseph told Officer Anger that the car she had just gotten out of was being driven by Eric L. Major and that she had just been assaulted by Major.
 

 Officer Anger reported the incident over the police radio, and several other police officers, including Sergeant Paul Erwin,
 
 [1]
 
 arrived to assist with the investigation. Officer Anger questioned Joseph about the incident, and Joseph told Officer Anger that she and Major were returning from a concert they had attended with a group of friends. Joseph also told Officer Anger that she and Major had been engaged but that Major had ended their engagement in January 2004. Joseph alleged that after they left the concert, Major pulled into a parking lot at the Embassy Suites Hotel, where he assaulted her and attempted to rape her. Joseph told Officer Anger that the physical altercation had lasted approximately one horn’, that Major had struck her on the left side of the face, and that she had used Mace to defend herself against Major. Joseph also indicated to Officer Anger that she did not wish to have Major arrested and prosecuted.
 

 Officer Anger also spoke with Major, who confirmed that he and Joseph had attended a concert earlier that evening and that he and Joseph had previously been engaged. Major told Officer Anger that after the concert Joseph had asked Major if she could ride with him to meet a group of friends at a local café. Major stated that on the way to the café Joseph began questioning him about their relationship and wanted to know why Major had ended
 
 *473
 
 their engagement. Major stated that he told Joseph he did not want to talk about their relationship and that Joseph became confrontational and began to attack him verbally. Major told Officer Anger that he then decided to drive Joseph back to her car, but that Joseph maced him before they reached her car. Major stated that his eyes began to burn and that he pulled his car over to the side of the road. At that point, Joseph got out of the car.
 

 During the on-scene investigation, Officer Anger reported that Joseph appeared to have a small red blotch beside the left side of her nose and a little puffiness and discoloration around her left eye. Officer Anger noted that Joseph’s and Major’s clothing appeared disheveled. Officer Anger also observed a dark stain on the left knee area of Joseph’s pants. Officer Anger observed similar dark-colored stains on the dashboard and the passenger’s side of the center console of Major’s car. Sgt. Erwin also noticed that Joseph had marks on her neck and on her wrists.
 

 Following the investigation by Officer Anger, Sgt. Erwin, and the other officers, Officer Anger arrested Major at the scene on one charge of assault.
 
 [2]
 
 Major was first taken to a nearby hospital for a physical examination and was later transported to the Birmingham city jail.
 

 Officer Anger presented the case to a magistrate judge for a probable-cause determination. The affidavit submitted by Officer Anger stated that Major had struck “the affiant.” Based upon Officer Anger’s affidavit, the magistrate judge found that there was probable cause to arrest and charge Major for assaulting Officer Anger. However, the charge was later amended to specify that Major was being charged for the alleged assault of Joseph. The charge was subsequently amended a second time
 
 [3]
 
 to charge Major specifically with third-degree domestic violence pursuant to § 13A-6-132, Ala.Code 1975.
 
 [4]
 

 Major was tried in the Birmingham municipal court, and he was found guilty of third-degree domestic violence against Joseph. Major appealed that judgment to the Jefferson Circuit Court, where the case was tried before a jury. The jury found Major not guilty of third-degree domestic violence, and the circuit court entered a judgment on the jury’s verdict.
 

 On April 27, 2006, Major filed a nine-count complaint against the City, Officer Anger, in his individual and professional
 
 *474
 
 capacity, and Joseph. Specifically, Major alleged a 42 U.S.C. § 1983 civil-rights violation and negligence against Officer Anger and the City. Major also alleged malicious prosecution, “false arrest/false imprisonment,” assault and battery, “verbal abuse/harassment,” defamation, and intentional infliction of emotional distress against all defendants, and he also asserted a conspiracy-to-violate-civil-rights claim against Officer Anger and Joseph. The City moved to dismiss the claims against it or, in the alternative, for a summary judgment. The trial court held a hearing on the City’s motion, and at the hearing the City moved the trial court for a more definite statement regarding Major’s § 1983 civil-rights claim. The trial court dismissed with prejudice the claims in which the City was named as a defendant, except for the § 1983 and “verbal abuse/harassment” claims. The trial court also ordered Major to amend his complaint and to include a more definitive statement regarding his § 1983 claim.
 

 Major filed a second amended complaint realleging the same material claims from his original complaint and included a more definite statement regarding his § 1983 claim, alleging that the City and Officer Anger had violated Major’s Fourth Amendment right “not to be arrested or seized without probable cause.”
 
 [5]
 
 Officer Anger answered Major’s second amended complaint and denied every material allegation contained in it.
 

 The case went to trial, and Major presented the testimony of Sergeant Wendell Major
 
 [6]
 
 and of Officer Anger.
 
 [7]
 
 Sgt. Major testified that he had had previous law-enforcement experience as a detective, a sheriffs deputy with the Jefferson County Sheriffs Office, and a patrol officer and that he had responded to numerous domestic-violence calls. Sgt. Major testified that when responding to a domestic-violence call, a law-enforcement officer has an affirmative duty to determine which party is the primary aggressor and that if an officer is unable to make this determination then there is no probable cause for an arrest. Sgt. Major further testified that, based upon his experience, he did not believe that Officer Anger conducted a thorough investigation by adequately investigating and recording Major’s version of events. Sgt. Major also testified that, in his opinion, Officer Anger did not have probable cause to arrest Major for the assault of Joseph and that Officer Anger had been inadequately trained in how to determine whether probable cause for an arrest exists.
 

 Officer Anger testified that he believed there was probable cause to arrest Major for assaulting Joseph. Officer Anger testified that the redness on the left side of Joseph’s face and the puffiness and discoloration around her left eye appeared to corroborate her allegation that Major had struck her on the left side of her face. Officer Anger also testified that there was evidence to corroborate Joseph’s claim of a physical altercation because, he said, the dark red stains he observed on Joseph’s clothing and in Major’s car appeared to be bloodstains. Officer Anger testified that under Alabama law he is authorized to make a warrantless arrest in a domestic-violence case only when there is probable cause that the primary aggressor abused the alleged victim.
 

 
 *475
 
 Officer Anger admitted that he did not question Major about Joseph’s allegation that Major attempted to rape her. Officer Anger also admitted that he arrested Major based upon the on-scene investigation and that no follow-up investigation was conducted after Major was arrested.
 
 [8]
 
 Officer Anger also admitted that he never had an evidence technician perform a test to determine if the dark red substance on Joseph’s clothing and in Majors’s car was, in fact, blood.
 

 After Major presented his case-in-chief, the City and Officer Anger moved the trial court for a judgment as a matter of law. The trial judge granted the motion as to the defamation and conspiracy claims against Officer Anger and denied the motion as to the remaining claims. The City and Officer Anger then presented the testimony of Jeffrey Gilliam, a prosecutor with the City of Birmingham Law Department, and Sgt. Erwin, a patrol supervisor with the South Precinct Task Force of the Birmingham Police Department.
 

 Gilliam testified that he was the prosecutor who had prosecuted Major on the charge of third-degree domestic violence. Gilliam testified that, in his opinion, the police had collected good evidence during the initial investigation and that the evidence collected by the police, such as the photographs of Joseph’s face, Joseph’s statements to the police, and the police report, created “a very good domestic violence case.” Gilliam also testified that the first warrant, which indicated that Officer Anger had been the victim of the assault, was the result of a clerical error that sometimes occurs.
 

 Sgt. Erwin testified that he arrived on the scene after he received Officer Anger’s call over the police radio. Sgt. Erwin testified that he interviewed Major and that Major told him that the incident was just a “misunderstanding.” Sgt. Erwin testified that he also interviewed Joseph and that she told him that she and Major had gotten into a fight while they were in Major’s car and that Major attempted to have sexual intercourse with her against her will. Sgt. Erwin testified that there appeared to be blood on Joseph’s pants and in Major’s car and that he observed marks on Joseph’s neck, wrists, and face that were consistent with a physical altercation. Sgt. Erwin also stated that both Major and Joseph confirmed that they had previously been engaged. Sgt. Erwin testified that, based upon all this evidence, he believed that there was probable cause to arrest Major for domestic violence.
 
 [9]
 

 After the City and Officer Anger finished presenting their case, both parties again moved the trial court for a judgment
 
 *476
 
 as a matter of law. The trial court granted the motion in part as to the City, dismissing the “verbal abuse/harassment” claim against the City, and denied the motion as to the § 1983 claim. The trial court also granted the motion in part as to Officer Anger, dismissing the § 1983, malicious-prosecution, negligence, “false arrest/false imprisonment,” and assault and battery claims, and denied the motion in part as to the “verbal abuse/harassment” and intentional-infliction-of-emotional-distress claims. The case was sent to the jury. The jury returned a verdict in favor of Officer Anger on the “verbal abuse/harassment” and intentional-infliction-of-emotional-distress claims. However, the jury returned a verdict in favor of Major and against the City on the § 1983 claim, and it awarded Major $500,000 in compensatory damages.
 

 The trial court entered a judgment on the jury’s verdict, and the City renewed its motion for a judgment as a matter of law pursuant to Rule 50(b), Ala. R. Civ. P.
 
 [10]
 
 The City also moved the trial court pursuant to Rule 15(b), Ala. R. Civ. P., to amend the pleadings to conform to the evidence presented at trial on Majors’s § 1983 claim. The trial court held a hearing on those motions but did not rule on them. Pursuant to Rule 59.1, Ala. R. Civ. P., both of the City’s motions were denied by operation of law on March 7, 2008. The City appeals.
 

 Standard of Review
 

 “When reviewing a ruling on a motion for a JML [judgment as a matter of law], this Court uses the same standard the trial court used initially in deciding whether to grant or deny the motion for a JML.
 
 Palm Harbor Homes, Inc. v. Crawford,
 
 689 So.2d 3 (Ala.1997). Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case to be submitted to the jury for a factual resolution.
 
 Carter v. Henderson,
 
 598 So.2d 1350 (Ala.1992). The nonmovant must have presented substantial evidence in order to withstand a motion for a JML. See § 12-21-12, Ala.Code 1975;
 
 West v. Founders Life Assurance Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989). A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury.
 
 Carter,
 
 598 So.2d at 1353. In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw.
 
 Id.
 
 Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court’s ruling.
 
 Ricwil, Inc. v. S.L. Pappas & Co.,
 
 599 So.2d 1126 (Ala.1992).”
 

 Waddell & Reed, Inc. v. United Investors Life Ins. Co.,
 
 875 So.2d 1143, 1152 (Ala.2003).
 

 Analysis
 

 Major asserts a civil-rights claim against the City pursuant to 42 U.S.C. § 1983.
 
 [11]
 
 In
 
 Monell v. Department of So-
 
 
 *477
 

 dal Services of New York,
 
 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court of the United States held that a local governmental entity is not vicariously liable for an injury inflicted by its employees or agents. “Instead, it is when execution of the government’s policy or custom, whether made by its lawmakers or by those whose edicts or acts may be fairly said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.”
 
 Mo-nell,
 
 436 U.S. at 694, 98 S.Ct. 2018. In order to hold a governmental entity liable for an injury inflicted by an employee or agent of the entity, an individual must demonstrate that he or she suffered “a constitutional injury at the hands of the individual [governmental employee or agent.]”
 
 City of Los Angeles v. Heller,
 
 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986).
 
 See also Hartline v. Gallo,
 
 546 F.3d 95, 103 (2d Cir.2008) (“To prevail against a municipality on a § 1983 claim, a plaintiff must demonstrate both an injury to a constitutionally protected right and that the injury ‘was caused by a policy or custom of the municipality or by a municipal official “responsible for establishing final policy.” ’ ” (quoting
 
 Skehan v. Village of Mamaroneck,
 
 465 F.3d 96, 108-09 (2d Cir.2006))). Therefore, the City is entitled to a judgment as a matter of law if it can demonstrate that Major failed to produce substantial evidence either that he suffered a constitutional injury or that his injury was caused by police action pursuant to a municipal policy or custom.
 

 We first address the City’s argument that the trial court erred in submitting this case to the jury because, it says, Major failed to prove that he suffered a constitutional injury sufficient to sustain his § 1983 claim. Major argues that he suffered a constitutional injury as a result of Officer Anger’s actions because, Major says, he was arrested without probable cause in violation of the Fourth Amendment to the United States Constitution.
 
 [12]
 
 Major further contends that the issue whether Officer Anger had probable cause to arrest him on a domestic-violence charge is a question of fact that the trial court properly submitted to the jury.
 

 “ ‘A warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim.’ ”
 
 Strickland v. City of Dothan,
 
 399 F.Supp.2d 1275, 1286 (M.D.Ala.2005) (quoting
 
 Kingsland v. City of Miami,
 
 382 F.3d 1220, 1226 (11th Cir.2004)). “However, an action for impermissible arrest is barred if probable cause existed at the time of arrest.”
 
 Strickland,
 
 399 F.Supp.2d at 1286 (citing
 
 Wood v. Kesler,
 
 323 F.3d 872, 878 (11th Cir.2003)). ‘“In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible.’ ”
 
 Fridley v. Horrighs,
 
 291 F.3d 867, 872 (6th Cir.2002) (quoting
 
 Pyles v. Raisor,
 
 60 F.3d 1211, 1215 (6th Cir.1995));
 
 see also Gray v. Burke,
 
 466 F.Supp.2d 991, 996 (N.D.Ill.2006) (“Probable cause typically presents questions fit for the jury, but when the facts are undis-
 
 *478
 
 putee!, probable cause may be resolved as a matter of law.”).
 

 Although Joseph and Major gave conflicting accounts as to what transpired on the night of Major’s arrest, the basic facts with which Officer Anger was confronted are undisputed: Both Joseph and Major admitted that they had previously been engaged, that an argument arose as they were driving from the concert to meet some friends at a local café, that Joseph sprayed Mace in Major’s face, that there was a slight swelling and discoloration around Joseph’s left eye, some discoloration on the left side of her face, and marks on Joseph’s neck and wrists, that both Major’s and Joseph’s clothing was disheveled, and that there were dark red stains on Joseph’s left pant leg and on the dashboard and the passenger’s side of the center console of Major’s car. Thus, we are confronted with a legal question of the sufficiency of these facts to establish probable cause.
 

 This Court has stated that “[pjrobable cause exists if facts and circumstances known to the arresting officer are sufficient to wai’rant a person of reasonable caution to believe that the suspect has committed a crime.”
 
 Dixon v. State,
 
 588 So.2d 903, 906 (Ala.1991) (citing
 
 United Staten v. Rollins,
 
 699 F.2d 530 (11th Cir.1983)). “The officer need not have enough evidence or information to support a conviction in order to have probable cause for arrest. Only a probability, not a prima facie showing, of criminal activity is the standard of probable cause.”
 
 Dixon,
 
 588 So.2d at 906 (citing
 
 Stone v. State,
 
 501 So.2d 562 (Ala.Crim.App.1986)).
 

 Major was arrested for violating § 13A-6-132(a), Ala.Code 1975, which provides that a person commits the crime of domestic violence in the third degree “if the person commits the crime of assault in the third degree pursuant to Section 13A-6-22 ... and the victim is ... a person who has or had a dating or engagement relationship with the defendant.” Section 13A-6-22, Ala.Code 1975, provides that a person commits the crime of third-degree assault if “[w]ith intent to cause physical injury to another person, he causes physical injury to any person.” In light of the undisputed facts, we hold that there was a sufficient factual basis for Officer Anger to believe that Major had committed a crime of domestic violence against Joseph.
 

 The first requirement of § 13A-6-132(a) is that an individual commit the crime of third-degree assault against the alleged victim. In this case, several undisputed facts provided a sufficient basis from which Officer Anger could conclude that Major had the intent to injure Joseph and that he did, in fact, physically injure her: the fact that Major and Joseph had an argument while in Major’s car, Joseph’s use of Mace against Major, and the disheveled appearance of their clothing would provide a sufficient basis for concluding that there had been some type of heated altercation between Major and Joseph. The swelling around Joseph’s left eye and other visible marks on her neck and wrists and the dark red, blood-like stains on Joseph’s left leg and in Major’s car all provided a sufficient basis for Officer Anger to conclude that Major had physically struck or forcibly grabbed Joseph.
 

 The second requirement of § 13A-6-132(a) is that the victim must have had a dating or engagement relationship to the alleged assailant. In this case, both Major and Joseph told Officer Anger that they had previously been engaged. Therefore, as a matter of law, the undisputed facts provided Officer Anger with probable cause to arrest Major for committing the offense of third-degree domestic violence.
 

 
 *479
 
 Major contends that these circumstances could not have provided Officer Anger with probable cause to arrest him for third-degree domestic violence because, Major says, he had alternative explanations for many of these circumstances. For instance, Major pointed out that both he and Joseph were disheveled in appearance because they were returning from a music concert. Major also argued that the dark red stains on Joseph’s left leg and in his car could have been a residue from the Mace Joseph had used on Major. Finally, during his direct examination, Major, after being shown the photographs of Joseph’s face after the alleged assault, commented that the redness on the left side of her face was caused by facial blemishes. “ ‘[F]acts ostensibly sufficient to establish probable cause for an arrest are not negated simply because such facts also may be consistent with the suspect’s innocence.’”
 
 United Staten v. Gilkeson,
 
 431 F.Supp.2d 270, 280 (N.D.N.Y.2006) (quoting
 
 United States v. Webb,
 
 623 F.2d 758, 761-62 (2d Cir.1980));
 
 see also Gagliardi v. Fisher,
 
 513 F.Supp.2d 457, 479 (W.D.Pa.2007) (holding that the defendant’s alternative explanation of the evidence, which was “equally consistent” with his guilt as with his innocence, did “not negate the existence of probable cause” for his arrest).
 

 This case is analogous to
 
 Signorile v. City of Perth Amboy,
 
 523 F.Supp.2d 428 (D.N.J.2007). In that case, Signorile was arrested for assaulting his wife after she told law-enforcement authorities that Sig-norile had hit her, causing a visible injury to her right eye. 523 F.Supp.2d at 430. However, the wife later recanted and told the police that she had injured herself when she had fallen in her bathroom.
 
 Id.
 
 The charges against Signorile were eventually dropped because the police were unable to collect sufficient evidence to prove that Signorile had assaulted his wife. 523 F.Supp.2d at 431. Signorile then filed a § 1983 action against the City of Perth Amboy and the Perth Amboy Police Department, alleging, among other things, that the police had falsely arrested and imprisoned him in violation of his Fourth Amendment rights. 523 F.Supp.2d at 432.
 

 The court began its analysis by noting that New Jersey’s domestic-violence statute required police officers to arrest a suspect if there was probable cause that an act of domestic violence had occurred and the victim exhibited signs of physical injury.
 
 Signorile,
 
 523 F.Supp.2d at 433. The court recognized that “an absolute defense to Signorile’s false arrest and imprisonment claims, under 42 U.S.C. § 1983, is the existence of probable cause.”
 
 Id.
 
 The court found that there was no dispute of material fact “that the arresting officers had probable cause to arrest Signorile” for assaulting his wife based upon the “exhibition of a physical injury to Mrs. Signorile’s eye” and her initial statement to the police that her husband had caused that injury. 523 F.Supp.2d at 434. Thus, the court concluded that “[bjecause the officers had probable cause to arrest Signorile, Signo-rile cannot establish that Defendants deprived him of any constitutional right.”
 
 Id.
 

 Similarly, we conclude that based upon the undisputed facts presented at trial, Major was unable to demonstrate that he was deprived of his constitutional right not to be arrested except upon a showing of probable cause, because the undisputed facts provided Officer Anger with probable cause to arrest Major for third-degree domestic violence.
 

 Conclusion
 

 Because the undisputed facts were sufficient to give Officer Anger probable cause to arrest Major for third-degree domestic violence against Joseph, we conclude that
 
 *480
 
 Major has not demonstrated that he suffered a constitutional injury to sustain his § 1983 claim. Therefore, we hold that the City was entitled to a judgment as a matter of law. We reverse the trial court’s judgment and render a judgment in favor of the City.
 
 [13]
 

 REVERSED AND JUDGMENT RENDERED.
 

 COBB, C.J., and WOODALL, SMITH, and PARKER, JJ., concur.
 

 [1]
 

 . In their briefs, both the City and Major spell Sgt. Erwin's last name as "Irwin.” We are using the spelling contained in the record.
 

 [2]
 

 . Section 15-10-3(a), Ala.Code 1975, provides:
 

 "An officer may arrest a person without a warrant, on any day at any time in any of the following instances:
 

 [[Image here]]
 

 “(8) When an offense involves domestic violence as defined by this section, and the arrest is based on probable cause, regardless of whether the offense is a felony or misdemeanor."
 

 [3]
 

 . The date of the second amendment was December 7, 2004, approximately seven months after the alleged incident.
 

 [4]
 

 . Section 13A-6-132(a) provides, in relevant part:
 

 "A person commits domestic violence in the third degree if the person commits the crime of assault in the third degree pursuant to Section 13A-6-22 ... and the victim is a current or former spouse, parent, child, any person with whom the defendant has a child in common, a present or former household member, or a person who has or had a dating or engagement relationship with the defendant.”
 

 Section 13A-6-22, Ala.Code 1975, provides, in relevant part:
 

 "(a) A person commits the crime of assault in the third degree if:
 

 "(1) With intent to cause physical injury to another person, he causes physical injury to any person; or
 

 "(2) He recklessly causes physical injury to another person ...."
 

 [6]
 

 . Sgt. Major is Eric Major’s brother.
 

 [7]
 

 .At the start of the trial, the defense moved the trial court to dismiss Joseph as a defendant. The trial court granted that motion.
 

 [8]
 

 . During direct examination, Officer Anger stated that he did meet with Joseph in late November or early December 2004 when the charge was amended to charge Major with third-degree domestic violence. Officer Anger testified that he met with Joseph at the behest of the City prosecutor's office in order to document some additional information that the prosecutor's office needed to try the case against Major. Officer Anger stated that his meeting with Joseph could be construed as a follow-up investigation. However, he also stated that this follow-up meeting was unusual in that it was the first domestic-violence case in which he had come into contact with the victim after the initial on-site investigation. Officer Anger also testified that domestic-violence cases are assigned to the department’s domestic-violence detectives after the initial on-site investigation has been completed. He testified that the domestic-violence detectives do not normally conduct a followup investigation because most domestic-violence cases involve misdemeanor offenses.
 

 [9]
 

 . Sgt. Erwin also testified that he told Major at the scene that Alabama's domestic-violence law authorized an officer to arrest a suspect if the officer determined that there was probable cause to believe that the suspect had committed a domestic-violence offense.
 

 [10]
 

 . Rule 50(b), Ala. R. Civ. P., provides, in relevant part:
 

 “Whenever a motion for a judgment as a matter of law made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted tire action to the jury subject to a later determination of the legal questions raised by the motion.”
 

 [11]
 

 . 42 U.S.C. § 1983, provides, in relevant part:
 

 “Every person who, under color of any statute, ordinance, regulation, custom, or
 
 *477
 
 usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress
 

 [12]
 

 . The Fourth Amendment to the United States Constitution provides, in relevant part:
 

 "The right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause ...."
 

 [13]
 

 . Because we decide this case on the ground that there was no constitutional injury, we do not address the other issues raised on this appeal.